369, § 75, 98 Stat. 494 (to be codified at 26 U.S.C. §§ 386 & 761(e) ).

D. In the Tax Reform Act of 1984, Congress provided that for purposes of determining the amount of gain recognized by a corporation on distribution of a partnership interest, the distribution shall be treated in the same manner as if it included the corporation's proportionate share of the recognition property of the partnership. The Joint Committee on Taxation report on the legislation referred to the Claims Court decision in this case, Joint Committee on Taxation, 98th Cong., 2d Sess., *General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984*, at 237 (Comm.Print 1984), and stated that "No inference is to be drawn from Congress's action regarding the treatment of the transactions described above under prior law." *Id.* at 239. We refer to this legislation only to show that the result we here reach is not inconsistent with what Congress recently viewed as the appropriate tax treatment of this situation. Indeed, the reasons Congress gave for adopting the provision closely parallel the reasoning of this opinion:

> If an interest in a partnership which holds recapture property could be distributed, or sold in liquidation, without being subject to recapture, the corporation would have effectively deferred (and perhaps avoided) the imposition of recapture tax. Thus, the corporation would have benefitted from the tax advantages of depreciation (including accelerated depreciation) without being subject to recapture as would [be] the case if the corporation distributed the recapture property directly to its shareholders. Congress believed that in this case, as elsewhere, the use of a partnership form should not result in greater tax benefits than would be available in the case of direct ownership.

*Id.* at 238.

## CONCLUSION

The judgment of the United States Claims Court is affirmed.

AFFIRMED.

Fred T. MORGAN, Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT, Respondent.

Appeal No. 84-1584.

United States Court of Appeals, Federal Circuit.

Sept. 5, 1985.

Frederick F. Sherwood, Helena, Mont., argued for petitioner.

E. Kathleen Shahan of Dept. of Justice, Washington, D.C., argued for respondent. With her on brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director and M. Susan Burnett. Daniel R. Levinson, Deputy Gen. Counsel, and John Howard, Office of Personnel Management, were of counsel.

Before FRIEDMAN, NIES and NEW-MAN, Circuit Judges.

FRIEDMAN, Circuit Judge.

This petition for review challenges a decision of the Merit Systems Protection Board (Board) affirming the decision of the Office of Personnel Management (OPM) that the petitioner is not eligible for early retirement as a "law enforcement officer" under 5 U.S.C. § 8336(c) (1982) because he did not have the amount of service in that capacity necessary to qualify for such retirement. We affirm.

I

A. Federal law enforcement personnel may retire at age 50 after "completing 20 years of service as a law enforcement officer." 5 U.S.C. § 8336(c). The term "law enforcement officer" is defined in 5 U.S.C. § 8331(20) (1982) as "an employee, the duties of whose position are primarily the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States, including an employee engaged in this activity who is transferred to a supervisory ... position."

An implementing regulation, 5 C.F.R. § 831.903(c) (1980), required that to obtain credit for service in a supervisory law enforcement position, "service in the [supervisory] position transferred to [must] follow[ ] service in a law enforcement position without ... [a] break in service of more than three days," or without "[i]ntervening employment that was not as a law enforcement officer." (We refer to these provisions together as the "break-in-service" requirements.) Subsection 831.-903(d), promulgated at 45 Fed.Reg. 996 (1980), provided upon transfer to a position that meets the criteria for a supervisory position, the individual "shall be deemed to have met the transfer requirements for all subsequent employment in supervisory ... positions," with an exception not relevant here.

B. The petitioner served with the Immigration and Naturalization Service (INS) in various law enforcement positions between 1956 and 1982, when he retired. In 1980, he sought to retire on the basis of 20 years' service as a law enforcement officer. The following periods of his employment are critical to his claim:

1. Service as a general investigator from April 11, 1965 to June 25, 1967.

2. Service between June 26, 1967 and January 4, 1971, in what he concedes was not a law enforcement position.

3. Service since January 5, 1971, in what concededly were supervisory law enforcement positions.

The petitioner's theory was that his service as a general investigator prior to June 1967 was in a supervisory law enforcement position, so that, under regulation 831.903(d), he was entitled to include his subsequent service after January 5, 1971, in determining his law enforcement retirement eligibility.

The Office of Personnel Management denied the petitioner's request for early retirement because he did not have 20 years of qualifying service. It determined that his service as a general investigator between 1965 and 1967 "was 'basic' law enforcement service under 5 U.S.C. § 8336(c) and did not satisfy the transfer requirement needed to obtain credit for supervisory law enforcement service" under that section. Consequently, the petitioner's service after January 5, 1971, did not qualify as "supervisory" law enforcement service because of the requirement in 5 C.F.R. § 831.903(c) that such supervisory service follow "basic" law enforcement service "without ... a break in service of more than three days."

On the petitioner's appeal, the presiding official of the Board affirmed OPM's determination. The presiding official ruled that the petitioner "did not occupy a supervisory position" during any of the time he was a general investigator, and that, since the petitioner had not shown the three-day service-break limitation of § 831.903(c) to be "contrary to the legislative intent of Congress in enacting 5 U.S.C. § 8336(c)," it operated to deny the petitioner credit for his service after January 5, 1971.

The Board granted review and affirmed the presiding official's decision, but modified it by adding that "under the clear language of [5 U.S.C. § 8331(20)], service as a supervisor will be credited only in cases where the employee has been 'transferred' from a basic law enforcement position to a supervisory position." The Board held that the petitioner had not satisfied that requirement.

## II

Because of the number of years of his service, the only way the petitioner could satisfy the 20-year service requirement for early law enforcement officer retirement would be by including his service after January 1971 as a supervisory law enforcement officer. In view of the three-and-a-half-year interval between the beginning of such service and the termination in June 1967 of his previous service as a general investigator, during which interval concededly he was not working as a law enforcement officer, the petitioner would appear precluded from relying upon his supervisory service since January 1971 under Regulation 831.903(c); such supervisory service would not follow his prior service as a general investigator "without [a] break in service of more than three days" or without "[i]ntervening employment that was not as a law enforcement officer."

The petitioner attempts to avoid this conclusion on two grounds. He argues (A) that his service as a general investigator was supervisory law enforcement work, and (B) that the break-in-service requirement in the regulation is invalid because it is arbitrary and denied the petitioner equal protection.

A. In addition to his direct law enforcement work, the petitioner performed certain supervisory duties during his service as a general investigator between April 1965 and June 1967. After specifying his direct law enforcement duties, the petitioner's job description stated:

3. Supervises, coordinates and controls the activities of other investigators of equal or lower grade assigned to assist in the development of the various phases of the investigation, and resolves jurisdictional conflicts, except in unusual circumstances.

4. Periodically is assigned as leader of a group of investigators of the same or lower grade. In such instances is responsible for the distribution of the work assigned to the group, coordinating and controlling the completion of cases, and furnishing leadership and guidance in the resolution of jurisdictional problems and interpreta-

tion and application of laws, rules, and regulations. Review of reports and recommendations made by the investigators composing the group is limited to ascertaining compliance with outstanding instructions, complete review being made by a higher grade officer.

During the 26 months the petitioner served in the general investigator position, he spent six months as a "search squad leader" and six months as a "control desk supervisor." Since those assignments involved supervisory work, he contends that he was transferred to a supervisory position when he was given those assignments and that his service in those assignments therefore constituted service in a supervisory position.

In rejecting this argument, the Board found "it was the office policy [of the INS] to rotate these assignments among the investigators for a six month period...." The Board also noted "the details of this assignment, as found by OPM and the presiding official after reviewing the position description, affidavits, and [petitioner's] arguments, indicate that [petitioner's] authority over other investigators in his office applied only to certain investigations that his group was performing." The Board concluded that "[a]lthough [the petitioner's] position description did contain some supervisory responsibilities, the primary activity of the General Investigator was not supervisory *per se,*" and that "even though [the petitioner] may have performed some supervisory functions when employed as a General Investigator, his service from April 1965–June 1967 was only entitled to basic law enforcement officer service credit."

We cannot say that these findings and conclusions of the Board are not supported by substantial evidence, are arbitrary and capricious, constitute an abuse of discretion, or are not in accordance with law. 5 U.S.C. § 7703(c) (1982). As discussed in part IIB, *infra,* the legislative history of the statute providing early retirement for law enforcement officers shows that Congress provided credit for supervisory service to encourage people to make a career of law enforcement, including promotion from regular to supervisory positions. The temporary detail to supervisory work that the petitioner had during his service in the general investigator position was not the kind of supervisory service that Congress intended to treat as supervisory law enforcement work in determining eligibility for early retirement.

As noted, the rotational assignments to supervisory work were merely temporary details. After their completion, the employee, unless he was immediately promoted to a supervisory position, obviously would return to his regular nonsupervisory work. It is not unusual to assign nonsupervisory employees temporarily to perform supervisory duties. This enables the employer to have substitutes available when a supervisor is absent or when the supervisor's workload suddenly increases. It also enables the employer to evaluate the suitability of various employees for subsequent promotion to supervisory positions. Despite such temporary assignment to supervisory duties, the detailed employees do not thereby become supervisors.

There is no reason to believe that when Congress defined "law enforcement officer" to include an employee engaged in law enforcement work "who is transferred to a supervisory ... position," it intended to cover the temporary detail of law enforcement officers to perform duties such as those involved in the petitioner's six months' service as search squad leader and control desk supervisor. Those were duties to which, as the Board found, the general investigators customarily were rotated. The use of the word "transferred" to a supervisory position in the statute indicates that Congress intended to cover only permanent assignments to supervisory positions.

A transfer in the federal service normally does not cover mere temporary details to other jobs. Even when the petitioner was performing his temporary supervisory duties for six-month periods, he continued

in his assigned position as a general investigator. When he was detailed to such supervisory work, he was not "transferred to a supervisory ... position."

B. The petitioner challenges the break-in-service requirements primarily on the ground that they are arbitrary because they are inconsistent with the Congressional purpose underlying the early retirement provisions for law enforcement officers. According to the petitioner, those provisions were designed to keep the law enforcement work force youthful by providing for early retirement. He asserts that the break-in-service regulations thwart that objective by making it more difficult for law enforcement officers to obtain early retirement.

Another of the objectives of the early retirement provisions—and probably just as important as the objective to which the petitioner refers—was to encourage people to make a career of federal law enforcement work. The present statutory provisions stem from Public Law No. 80–879, 62 Stat. 1221, *reprinted in* 1948 U.S.Code Cong. & Ad.News 911, which provided early retirement eligibility for law enforcement personnel of the Federal Bureau of Investigation and certain other agencies. That act covered employees engaged in specified law enforcement activities, "includ[ing] any officer or employee engaged in such activity who has been transferred to a supervisory ... position," who had performed those duties for 20 years, "including the duties of a supervisory ... officer or employee." *Id.* The accompanying House Report, No. 2034, 80th Cong., 2d Sess., *reprinted in* 1948 U.S.Code Cong. & Ad.News 2276, 2276, states that one objective of the legislation was to "encourage[ ]" young people "to enter this vital work on career-service basis." The Supreme Court recently stated in *Johnson v. Mayor and City Council of Baltimore,* —— U.S. ——, 105 S.Ct. 2717, 86 L.Ed.2d 286 (1985), that this provision "was designed in part '[to] stabilize the service of the Federal Bureau of Investigation into a career service, ... [and to] act as an incentive to investigative personnel of the [FBI] to remain in the

Federal service until a reasonable retirement age is reached.' " *Id.,* 105 S.Ct. at 2723 (*quoting from* S.Rep. No. 76, 80th Cong., 1st Sess 1–2 (1947) ) (insertions in original).

In 1974 Congress enacted Public Law No. 350, 93d Cong., 2d Sess., 88 Stat. 355, *reprinted in* 1974 U.S.Code Cong. & Ad. News 395, which provided the current definition of "law enforcement officer" as covering both an employee whose duties are "primarily" in the law enforcement field of work and "an employee engaged in this activity who is transferred to a supervisory ... position." The accompanying House Report, No. 463, 93d Cong., 1st Sess. (1974), stated that one "basic objective" of the bill was "that young men be encouraged to enter and remain in such careers." *Id.* at 4.

■ The break-in-service requirements are a reasonable implementation of that purpose. Many, if not most, supervisors are promoted from the ranks of the regular employees. Ordinarily, those selected are the ablest. Unless those employees could credit their supervisory service toward their qualification for early retirement, many of these ablest employees might be reluctant to accept promotion to a supervisory position, because that step would preclude them from the benefit of early retirement—a result that would be inimical to both the concept of a career service and to the interest of the agency.

The objective of encouraging and developing a career service for law enforcement officers would not necessarily be served if all such officers were covered without regard to the continuity of their service. The very concept of a career service contemplates that the participants in the program will work in a continuous and regular course without any break in service. Since the early retirement program is more costly to the government than traditional retirement plans and often results in the retirement of important people at a time when they would otherwise have continued to work for a number of years, the govern-

ment was entitled to impose appropriate limitations upon eligibility for such retirement. The break-in-service requirements are an appropriate limitation, since they reasonably further the objectives of the program while at the same time reducing its adverse impact upon the government.

■ The scope of our review of the validity of an administrative regulation such as this necessarily is limited. As long as the regulation reasonably implements the purpose of the legislation and is not inconsistent with any constitutional or specific statutory provision, we have no basis upon which to overturn it. *Federal Communications Commission v. National Citizens Committee for Broadcasting,* 436 U.S. 775, 98 S.Ct. 2096, 56 L.Ed.2d 697 (1978); *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). We cannot substitute our judgment for that of the agency with respect to the determination of which particular requirement will best serve the statutory purpose. *Id.* at 416, 91 S.Ct. at 823.

The petitioner has not shown that the break-in-service regulations do not properly implement the congressional purpose of developing a career service for law enforcement officers, or otherwise are improper. There is no basis for us to conclude that Congress intended someone in the petitioner's situation, who interrupted his law enforcement career for a three-and-a-half-year stint in a nonlaw enforcement position, to have the benefits of the early retirement it provided for persons following a career in law enforcement.

Our conclusion that the break-in-service regulations have a reasonable basis also disposes of the petitioner's equal protection argument. *Cf. Vance v. Bradley,* 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979). The petitioner also challenges on equal protection grounds the alleged inconsistency between 5 C.F.R. § 831.903(d), allowing an indefinite break in service once supervisory credit has been obtained, and the three-day break-in-service limitation in subsection 831.903(c). Subsection 831.903(d), which was promulgated in 1980, after subsection 831.903(c), constitutes an attempt to alleviate some of the harsh effects of the latter subsection. 44 Fed.Reg. 49,694 (1979). As such, it does not deny the petitioner equal protection.

The decision of the Merit Systems Protection Board is affirmed.

AFFIRMED.