John A. RYAN, Petitioner,

v.

**MERIT SYSTEMS PROTECTION
BOARD, Respondent.**

**Appeal No. 85-2069.**

United States Court of Appeals,
Federal Circuit.

Dec. 12, 1985.

Amy Wind, Kator, Scott & Heller, Washington, D.C., for petitioner. With her on brief were Irving Kator and Joseph B. Scott.

Paul G. Streb, Merit Systems Protection Bd., Washington, D.C., for respondent. With him on brief were Evangeline W. Swift, Gen. Counsel, Mary L. Jennings, Associate Gen. Counsel for Litigation and David C. Kane.

Before MARKEY, Chief Judge, RICH and SMITH, Circuit Judges.

MARKEY, Chief Judge.

John A. Ryan (Ryan) petitions for review of a decision of the Merit Systems Protection Board, Docket No. BN07528310092, 25 M.S.P.R. 551, reversing the decision of its Presiding Official and dismissing his appeal for lack of jurisdiction. We reverse.

*Background*

*A. Employment History*

Ryan was hired by Naval Investigation Service (NIS), on September 10, 1962 as a Criminal Investigator, GS–1811, a federal "law enforcement" position entitling him to an increased annuity credit under 5 U.S.C. § 8339(d).[1] In that position Ryan per-

---

1.  5 U.S.C. § 8339(d) provides that a law enforcement officer or firefighter retiring under 5 U.S.C. §§ 8335(b) (mandatory separation) or § 8336(c) (early retirement) will receive an annuity of "2½ percent of his average pay multiplied by so much of his total service as does not exceed 20 years," 5 U.S.C. § 8339(d)(1)(A), and

"2 percent of his average pay multiplied by so much of his total service as exceeds 20 years," 5 U.S.C. § 8339(d)(1)(B).

The annuity generally provided to non-law enforcement officers or non-firefighters is "2 percent of his average pay multiplied by so

formed criminal, counter-intelligence and personnel security investigations (PSIs).

In August 1972, Ryan and all other NIS Investigators received a "Notification of Transfer of Function and Offer of Transfer" to a new organization, the Defense Investigative Service (DIS). The "Offer of Transfer" provided that Ryan would retain the title, grade, and pay he enjoyed at NIS. Ryan accepted.

A number of transferred NIS investigators (but not Ryan) sought early retirement under 5 U.S.C. § 8336(c). On December 26, 1974, the Civil Service Commission's (CSC) Bureau of Retirement, Insurance, and Occupational Health (BRIOH) denied early retirement because the duties at DIS did not fit the definition of "law enforcement officer" in 5 U.S.C. § 8331(20). A representative former NIS investigator, Cecil G. Boggs, appealed to CSC's Appeals Review Board (ARB), which upheld BRIOH's determination on the view that DIS' principal mission was the performance of PSIs.

### B. The District Court

Boggs and eighteen present and former NIS investigators (but not Ryan) appealed to the District Court for the District of Columbia. *See Boggs v. Regan,* Civ. Action No. 79–1090 (D.D.C. June 26, 1981). The district court saw "no need to dispute the merits of the BRIOH and [ARB's] definition of law enforcement work for the purpose of [§ 8336(c)] coverage," and viewed that determination as "a correct interpretation of the law."

The district court nonetheless held the government equitably estopped from denying Boggs § 8336(c) benefits because: (1) the government gave no indication that Boggs would lose those benefits if he accepted transfer; (2) Boggs had every reason to believe that identical retirement coverage would apply to a transfer of function with the same classification; (3) Boggs was given only six days to decide on limited facts, and (4) Boggs' decision, "with its extraordinary consequence of loss of much of his total service as exceeds 10 years."

[8336(c)] coverage was based upon a misconception actively fostered by the government."

Noting the government's position (that work at NIS was law enforcement, but identical work at DIS was not, an inconsistency it found arbitrary and capricious), the district court said "we have the unusual circumstance of no coherent current interpretation of the law which should be protected from the application of estoppel."

The district court rejected the government's argument that estoppel would result in undue harm, finding no support for the implication "that this decision would apply to anyone other than the named plaintiffs in this case," explaining that "[t]his decision does not bar the government from making a decision that as to employees who were not misled in this fashion, PSI work does not qualify for law enforcement retirement coverage."

### C. Ryan's Separation

DIS wrote OPM, requesting an advance decision on crediting Ryan's NIS and DIS service under § 8336(c). OPM responded on July 7, 1982:

The U.S. District Court for the District of Columbia has found in the case of *Boggs v. Regan,* Civil Action No. 79–1090 that employees of the Naval Investigative Service (NIS) who transferred to the Defense Investigative Service (DIS) with the understanding that their coverage under section 8336(c) would continue, shall receive credit under section 8336(c) for such service. The Solicitor General's Office has decided against appeal from this decision. While no class was certified in this case, we have decided as a matter of policy to apply the decision to the cases of all employees of the NIS who were transferred to the DIS in 1972.

OPM made no comment with respect to mandatory retirement of transferred NIS investigators under § 8335(b).

5 U.S.C. § 8339(a)(3).

On August 5, 1982, DIS wrote Ryan, quoting in full OPM's statement, *supra,* and adding:

3. Effective January 1, 1978, a law enforcement officer or firefighter must be separated from the service and is entitled to an immediate annuity on account of age retirement [when the conditions of § 8335(b) are met].

4. Since you will have 20 years of creditable service on September 10, 1982 and have reached age 55, your retirement is mandatory on September 10, 1982. However, I am extending your mandatory retirement date to no later than January 22, 1983. Should you wish to exercise your right to retire before that date, you may do so.

Ryan's oral reply to DIS was rejected and Ryan was mandatorily retired on January 31, 1983.

### D. Ryan's Appeal to the Board

Appearing pro se, Ryan appealed to the Board on February 16, 1983, saying his retirement was "against my will," and requesting reinstatement.

To DIS' assertion that he was improperly trying "to reap the benefits of 8336(c)" while ignoring the public policy behind early retirement, Ryan replied on March 24, 1983, saying "I already possess the benefits of 8336(c) ... [T]he point of my adverse action appeal is my desire to be retained for employment by DIS and nothing else." Ryan acknowledged Congress' intent embodied in sections § 8335(b) and 8336(c), but said three conditions were required for mandatory retirement: (1) age, (2) length of service, and (3) employment as "a law enforcement officer or a firefighter" as defined in § 8331(20). While admitting that he met the first two conditions, Ryan asserted that condition (3), and hence the justification for mandatory retirement, was lacking.

### E. Presiding Official's Decision

Before the Presiding Official, DIS challenged the board's jurisdiction over mandatory separations under § 8335(b), citing *Lawrence v. Department of the Army,* 9 MSPB 63, 9 M.S.P.R. 419 (1982). Ryan, having the burden, 5 CFR § 1201.56(a)(2), maintained that because his separation was not in accordance with law, it was an adverse action under the board's jurisdiction.

The Presiding Official found that Ryan had 20 years of creditable service for § 8336(c) retirement purposes "even though the work which he performed on and after October 1, 1972 primarily involved PSI's which was not 'law enforcement' in nature." Having reviewed the language of § 8335, its legislative history, and the court's decision in *Boggs,* the Presiding Official concluded:

I find that appellant is no more covered by § 8335(b) than an individual who is appointed to a law enforcement officer position at age 25 and at age 46 transfers to a non-law enforcement officer position in another agency. Such a person undoubtedly would not be subject to mandatory retirement upon reaching age 55. Appellant transferred from his law enforcement position with NSI at age 49 and thereafter was not subject to 8335(b) which was enacted at a later date. It was only as a result of the *Boggs* decision that he was entitled to additional retirement *credit* under 8336(c) and 8339(d). [Emphasis in original.]

Noting that Ryan's separation was required by no law, rule or regulation, the Presiding Official found it an adverse removal action under 5 U.S.C. § 7512, and thus within the board's jurisdiction. He further found that the agency's failure to process the action in accordance with 5 U.S.C. § 7513 constituted harmful error and reversed the separation.

### F. Decision of the Board on Review

The full board reversed, saying the Presiding Official interpreted the district court's decision in *Boggs, supra,* "too narrowly":

... Since § 8336(c) only grants the special retirement coverage to law enforcement officers and firefighters, it is clear

that in the absence of Congressional intent to the contrary, appellant's status must be considered a law enforcement officer to be entitled to retirement credit under that section.

Further, the Boggs court noted that it could not be disputed that the investigator plaintiffs had every reason to believe that the same retirement coverage would apply to a transfer of the same function with the same classification to the new agency.... Therefore, the Board can reasonably infer that the court intended that these employees were to be considered as law enforcement officers in exactly the same way as they were prior to the transfer.

The board analogized its decision to that in *Graber v. Office of Personnel Management*, 20 M.S.P.R. 267 (1984), in which it had reversed an OPM denial of § 8336(c) retirement to a law enforcement officer who was transferred to an attorney position, but continued to perform substantially the same duties, considering it anomalous for OPM to deny that position § 8336(c) coverage. Thus, the board reasoned, Ryan's "position at the agency must be considered as law enforcement since he was performing the same duties as those he performed with DIS [sic, NIS], a position granted law enforcement credit by the former CSC."

The board vacated the Presiding Official's decision and dismissed Ryan's appeal for lack of jurisdiction over mandatory retirements under § 8335(b).

### Issues Presented

Whether the board's decision was not in accordance with law. 5 U.S.C. § 7703(c).

### OPINION

Ryan argues before us that: (1) mandatory separation under § 8335(b) was improper because he was not, when separated, a "law enforcement officer"; (2) jurisdiction is present because his separation

was an adverse action; (3) "law enforcement officer" is narrowly defined in 5 U.S.C. § 8331(20), and is intended to be strictly construed, and (4) the board erred in its expansive reading of *Boggs* as though it held that Ryan was a law enforcement officer.

The government argues before us that: (1) Ryan is or should be deemed a "law enforcement officer" for § 8335(b) purposes "because he has been deemed one for purposes of § 8336(c)"; (2) if Ryan wishes to receive the benefits of § 8336(c), he must bear the burden of § 8335(b); (3) it would thwart the purposes of the statute to hold otherwise; (4) permitting Ryan to enjoy a "windfall" in the form of a greater annuity would be costly; and (5) the board properly applied the spirit of *Boggs*.

#### a. Was Ryan a "law enforcement officer"?

■ The board's view that Ryan's "position at the agency must be considered as law enforcement since he was performing the same duties as those he performed with DIS [sic, NIS], a position granted law enforcement credit by the former CSC," is not supported by substantial evidence of record.

5 U.S.C. § 8331(20) provides, in pertinent part:

(20) "law enforcement officer" means an employee, the duties of whose position are primarily the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States, including an employee engaged in this activity who is transferred to a supervisory or administrative position.

This court has indicated that § 8331(20) must be strictly construed. *See Morgan v. Office of Personnel Management*, 773 F.2d 282, 284 (Fed.Cir.1985).[2] Moreover, a unanimous Supreme Court has set forth detailed reasons why § 8335(b) must also

---

**2.** *See also Little v. Office of Personnel Management*, 762 F.2d 962 (Fed.Cir.1985); *accord Cole v. Office of Personnel Management*, 754 F.2d

984, 986 (Fed.Cir.1985); *Ellis v. United States*, 610 F.2d 760 (Ct.Cl.1979).

be narrowly applied. *Johnson v. Mayor and City Council of Baltimore,* — U.S. —, —, 105 S.Ct. 2717, 2723–26, 86 L.Ed.2d 286 (1985).

There is here no plausible evidence that Ryan meets the definition of "law enforcement officer" appearing in § 8331(20). BRIOH determined that DIS investigators did not meet that definition because their major responsibility was PSIs. ARB upheld that determination. The government told the court in *Boggs* that DIS investigators were not "law enforcement officers". That court refused to dispute BRIOH and ARB's determinations, saying they appeared "to be a correct interpretation of the law." The Presiding Official found that "[i]t is *undisputed* that appellant performed 'law enforcement' work only from September 10, 1962 to September 30, 1972 while employed at NIS," (emphasis added), and that "[a]t DIS, appellant and the others transferred from NIS performed work which consisted primarily of (PSI's) the function of which does not fit the definition of law enforcement work. Finally, the government's brief here says Ryan "was not in fact a law enforcement officer."

The board's view that Ryan "must be considered" a law enforcement officer at DIS is thus flatly contradicted by the clear language of the statute, by administrative decisions of BRIOH and ARB, by the government's assertions in *Boggs,* by the court's opinion in *Boggs,* by the government's assertions before the Presiding Official, by the findings of the Presiding Official, and by the government's statement on this appeal. Not even a scintilla of evidence exists on the present record to balance that contradiction of the board's view.

Reliance on *Graber v. Office of Personnel Management, supra,* is misplaced. In *Graber,* the board ordered § 8336(c) credit for a law enforcement officer who, though transferred in name to an "attorney" position, continued to perform duties fitting the definition of a "law enforcement officer" in § 8331(20). The substance of Graber's job description and the duties he actually performed governed the outcome. *Accord*

*Morgan v. Office of Personnel Management,* 773 F.2d at 284–85. Here, the evidence clearly shows that Ryan did not fit the statutory definition of a law enforcement officer. The board's decision to "consider" him one, because of his earlier work at NIS, impermissibly and irrationally substituted an empty wish for fact.

### b. Should Ryan be "deemed" a "law enforcement officer"?

■ The government, recognizing that Ryan does not fit the definition in § 8331(20), urges that he be "deemed" a law enforcement officer for mandatory retirement purposes, arguing that: (1) Ryan did not "disavow" OPM's grant of § 8336(c) credit; (2) Ryan enjoys the benefits of § 8336(c), so he must bear the burden of § 8335(b). The arguments are meritless.

(1) The government does not explain why Ryan owed a duty to disavow the benefits of the higher annuity rate afforded by section 8336(c)(1), or precisely how he could unilaterally "disavow" OPM's decision to credit part of his service at DIS for purposes of § 8336(c) retirement. OPM decided "as a matter of policy" to apply *Boggs* to Ryan and all like-situated DIS employees. That policy was not required by the district court, which expressly limited the equitable relief granted to the nineteen plaintiffs on the complaint, and said "[t]his decision does not bar the government from making a decision that as to employees who were not misled in this fashion, PSI work does not qualify for law enforcement retirement coverage."

Because OPM accorded Ryan § 8336(c) credit with no legal requirement that it do so, common sense compels the conclusion that OPM acted as a matter of administrative convenience. In view of the small number of DIS investigators whose retirement rights remained undetermined, the actual "cost" of § 8336(c) credit may well have been viewed as less than the potential cost of future litigation. Whatever the underlying reason, OPM's decision was expressly based on OPM "policy", and not the

merits of Ryan's case. OPM's action tendered no "disavowal" option, and, most importantly, nothing of record indicates that the government asserted at the hearing that Ryan could or should have "disavowed" § 8336(c) benefits. It cannot now invoke lack of "disavowal" as a basis for linking § 8336(c) benefits with § 8335(b) mandatory retirement.

(2) The government's "benefit and burden" argument: (i) misconceives Congress' intent in enacting the early retirement provisions; (ii) includes meritless assertions respecting "cost"; and (iii) stands equity on its head.

(i) Though § 8336(c) and § 8335(b) work "in tandem", they do so in a way different from that asserted by the government. An important stated purpose of § 8336(c) and its predecessor statutes was "to 'encourage[]' young people 'to enter this vital work [of federal law enforcement and firefighting] on a career-service basis." House Report No. 2034, 80th Cong., 2d Sess., *reprinted in* 1948 U.S.Code Cong. & Ad. News 2275, 2276; *Morgan v. Office of Personnel Management,* 773 F.2d 282, 286. Mandatory retirement under § 8335(b) serves a related purpose, being designed "to keep the law enforcement work force youthful by providing for early retirement." *Id; accord Johnson v. Mayor and City Council of Baltimore,* —— U.S. at ——, —— n. 11, 105 S.Ct. at 2724, 2725 n. 11. The statutes are complementary in achieving Congress' intent to create a youthful, career-oriented federal law enforcement corps.

Mandatory retirement of Ryan can neither encourage young people to enter the law enforcement service nor keep that service youthful because, in short, DIS does not perform law enforcement activities and Ryan is not a law enforcement officer.

Moreover, the government's "benefit and burden" argument is but legal makeweight. There is no quid-pro-quo between the statutory sections. The benefits in § 8336(c) and its predecessor statutes are not there to compensate for mandatory retirement under § 8335(b). As the Supreme Court explained, the latter requirement was enacted in a 1974 amendment, and thus antedates the benefits provisions of § 8336(c). *Johnson v. Mayor and City Council of Baltimore,* —— U.S. at ——, 105 S.Ct. at 2723–24. Rather than benefit and burden, both sections were designed to encourage a youthful and career-oriented law enforcement and firefighting corps, ostensibly a benefit to all. The Government's citation to *Fahey v. Mallonee,* 332 U.S. 245, 255–56, 67 S.Ct. 1552, 1556–57, 91 L.Ed. 2030 (1947) for the proposition that "a person may not retain the benefits of a statute while attacking the constitutionality of one of its important conditions" is inappropriate here, where no one is attacking the constitutionality of anything.

(ii) The government's assertions respecting "cost" are fallacious. This case rests on an unusual set of facts common to a relatively small group of federal employees. The government's decision not to appeal in *Boggs,* and to unilaterally accord Ryan and others § 8336(c) credit, are indications that cost considerations are minimal. Against the backdrop of this case, the government's citation of an asserted increase in unfunded liability of the retirement fund of $664 million serves no useful rational purpose. *Cf. Morgan v. Office of Personnel Management,* 773 F.2d at 286–87.

Moreover, any cost considerations would apply solely to OPM's decision to grant Ryan § 8336(c) credit, a matter not at issue here. They could not apply to Ryan's continued employment by the government. Under OPM's unchallenged decision, Ryan is *entitled* to 20 years of credit as a law enforcement officer whether he is mandatorily retired or continues to work for the government. Annuity for any service he renders the government beyond those 20 years will be *identical* to that paid a non-law enforcement employee having more than 10 years service. 5 U.S.C. § 8339(d)(1)(B). The Presiding Official was entirely correct in noting that Ryan's position at DIS after completing 20 years of service is the same as that of a law en-

forcement officer who, following 20 years of service, transferred into a non-law enforcement branch of the service. The Government's assertion of "windfall" and that "his total annuity would obviously be greater than an annuity based solely on twenty years of law enforcement service" is meaningless in the context of this case and, if accepted, would be misleading here.

(iii) The government urges us to concur in the board's interpretation of *Boggs*, while admitting that "strictly speaking" Ryan is correct in arguing the narrow scope of that opinion. We cannot, of course, concur in an interpretation that is manifestly incorrect as a matter of law.

As above indicated, nothing in the court's opinion in *Boggs* can be interpreted as supporting the view that Ryan and other DIS investigators "must be considered law enforcement officers". *Boggs* was expressly limited to the determination of the equitable rights of certain DIS investigators to retirement credit under § 8336(c). It did not deal with mandatory retirement under § 8335(b). The government turns *Boggs* on its head in urging that anything there requires Ryan's mandatory retirement. The circumstances that form the genesis of this case were created by the government. To accept the government's arguments on this appeal would be manifestly inequitable.

### Conclusion

■ The board's decision was not in accordance with law. Because Ryan was not a law enforcement officer at DIS, the mandatory retirement provision of 5 U.S.C. § 8335(b) was improperly applied to him. Ryan's separation was therefore an adverse removal action and an appeal from that adverse action was within the board's jurisdiction. The government concedes that, if Ryan's separation were an adverse action, "the Board would have reversed the action for noncompliance with the provisions of 5 U.S.C. § 7513, which requires that adverse actions be effected only for the efficiency of the federal service and in accordance with the procedures set forth in that section." That would have been a

correct disposition by the board, and is the disposition of this appeal.

In view of the foregoing, it is unnecessary to discuss other contentions of the parties.

REVERSED.