**MINOR METALS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 97–194C.**

United States Court of Federal Claims.

May 20, 1997.

David B. Dempsey, Washington, D.C., for plaintiff; Stanley R. Soya, Donna Lee Yesner, Kevin P. Mullen, Washington, D.C., of counsel.

Miguel A. Serrano, Washington, D.C., with whom were Assistant Attorney General Frank W. Hunger, Director David M. Cohen, and Essie Schloss, Counsel for Defense National Stockpile Center, for defendant.

## PRELIMINARY INJUNCTION

MOODY R. TIDWELL, III, Judge.

This matter is before the court on plaintiff's motion for a preliminary injunction, filed pursuant to RCFC 65 as well as defendant's motion for summary judgment. Additionally, defendant filed a motion for judgment on the record which is moot as a result of the rulings within this decision. Oral argument was heard on May 15, 1997. No facts are in dispute. For the reasons set forth below, the court grants plaintiff's motion in part and denies it in part, and grants defendant's motion in part and denies it in part.

## FACTS

On February 26, 1997, defendant, through the Defense Logistics Agency's Defense National Stockpile Center ("DNSC"), issued an Invitation for Bids ("IFB") under Solicitation No. DLA–COBALT–005 for the purchase of 1,000,000 pounds of cobalt ("the solicitation").[1] The solicitation stated that sealed bids were to be submitted by 1:00 p.m. on March 31, 1997. It contained 66 separate line items, representing differing grades and quantities of cobalt, and stated bidders must specify which items they are bidding on as well as whether the line item will be consumed in the United States (Category A) or exported in the form purchased (Category B). The IFB states that preference will be given to Category A bids when the price bid for both categories is equal. In addition, the solicitation states that "all or none" bids will not be accepted. According to its terms, award(s) "will be made based on the overall best value to the Government for each category even if that does not result in the total highest dollar return."

Plaintiff brought action in this court on March 27, 1997, seeking a declaratory judgment as well as injunctive relief.[2] Plaintiff claims that the solicitation violates federal statutes and asks this court for a temporary restraining order as well as preliminary and permanent injunctive relief enjoining the continuation of the solicitation process. Specifically, plaintiff asked the court to order the cancellation of the March 31, 1997 deadline for the submission of bids. In response, defendant agreed to postpone the deadline to April 7, 1997, in order to allow this court time to hear argument on the merits of plaintiff's claim. That deadline was further extended in order to allow the parties to prepare for the hearing held May 15, 1997. This

---

1. Such sales are authorized under the Strategic and Critical Materials Stockpiling Act, 50 U.S.C. § 98 *et seq.* (1994), and related authority contained in § 3303 of the National Defense Authorization Act of 1997, PL 104–201 § 3303, 110 Stat. 2855–56.

2. Plaintiff also filed suit in the Eastern District of Virginia. *Minor Metals Inc., v. United States,* C.A. 97–505–A (E.D.VA. May 5, 1997). For reasons which are evident in this opinion, the court disagrees with part of that decision.

agreement rendered plaintiff's motion for a temporary restraining order moot.

## DISCUSSION

### I. Summary Judgment

Summary judgment is appropriate when there exist no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Campbell v. United States*, 2 Cl.Ct. 247, 249 (1983). A genuine issue of material fact is one that would change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court does not weigh the evidence; it only determines questions of law based upon undisputed facts. Disputes over facts which are not outcome determinative, however, will not preclude the entry of judgment. *Id.* at 248, 106 S.Ct. at 2510. When the moving party has met its burden of showing entitlement to judgment as a matter of law, the burden shifts to the non-moving party to provide facts establishing that a genuine issue for trial exists, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986), and the non-moving party may not discharge its burden by cryptic, conclusory, or generalized responses. *See Willetts v. Ford Motor Co.*, 583 F.2d 852, 856 (6th Cir.1978); *Tunnell v. Wiley*, 514 F.2d 971, 976 (3d. Cir.1975). In the present case, the court finds no genuine issues of material fact which preclude summary judgment.

Defendant presents two issues to be decided in its motion for summary judgment. The first is whether the Defense National Stockpile Center (DNSC) has the authority to prohibit all or none bids. The second is whether the DNSC has the authority to include a domestic preference in its solicitations. The court finds that the DNSC administrator does have the legal authority and discretion to implement both a prohibition on all or none bids and to include a domestic preference provision.

 Recognition of the wide latitude and discretion given to agency decision-making is a cornerstone of administrative law. In fact, decisions made by government agencies are to be followed unless proven to be arbitrary and capricious. *See Ray v. Lehman*, 55 F.3d 606, 608 (Fed.Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 304, 133 L.Ed.2d 209 (1995); *Morgan v. Office of Personnel Management*, 773 F.2d 282, 287 (Fed. Cir.1985). Absent proof that an agency has abused its discretionary powers, the courts are unwilling to disturb policies put in place by an agency. Thus, if the agency's decision is reasonable, the court will not second-guess such decision even if the court might have reached a different decision. *Baird Corp. v. United States*, 1 Cl.Ct. 662, 664 (1983).

### A. Defendant's refusal to permit all or none bids

 Defendant's decision to bar all or none bids will be upheld unless it was arbitrary and capricious. Four factors are typically considered when determining if the government acted in such a manner. Two of these are relevant to this case: (1) the absence of a reasonable basis for the administrative decision; and (2) the proven violation of pertinent statutes or regulations. *Magnavox Elec. Systems Co. v. United States*, 26 Cl.Ct. 1373, 1381 (1992) (citing *Keco Indus., Inc. v. United States*, 203 Ct.Cl. 566, 492 F.2d 1200, 1203–04 (1974)).

The government argues that the decision to prohibit all or none sales was a discretionary one, which was neither arbitrary, capricious, nor contrary to law. Deposition testimony of Richard J. Connelly, Administrator of the DNSC, demonstrated that the decision to prohibit all or none bids was made in response to his judgment as administrator that such bids restrict competition and that they would eventually disrupt the markets of the materials being sold by the government. Such an explanation is fully consistent with the statutory framework of the DNSC. The Strategic and Critical Materials Stockpiling Act (the Act) says that:

> To the maximum extent feasible—(1) competitive procedures shall be used in the acquisition and disposal of such materials; and (2) efforts shall be made in the acquisition and disposal of such materials to avoid undue disruption of the usual markets of producers, processors, and consumers of

such materials and to protect the United States against avoidable loss.

50 U.S.C. § 98e(b).

Plaintiff points to statutory authority which indicates that the sale of surplus materials, like the cobalt at issue in this case, must be done in a manner designed to avoid any avoidable loss. Plaintiff's interpretation of this is that the government must seek the highest possible total return in order to avoid loss. However, a second and equally reasonable interpretation is that the government is to avoid selling the materials for less than it paid for them. Plaintiff also cites Comptroller–General decisions showing that prohibitions on all or none provisions should be used sparingly. *See, e.g., Main & Turner Supply Co.,* B–181082, 74–2 CPD ¶ 267. However, these opinions are not conclusive.

While the decision to prohibit all or none bids in the interests of promoting the Act may be incorrect, which the government concedes is a possibility, it is irrelevant to the question of whether or not the DNSC has the authority to make such a decision. As government counsel stated during the hearing, it has a right to be wrong. The court must agree with this conclusion. It is within the agency's discretion to tailor the rules governing sales of surplus materials in order to comply with the statutory framework. If, through implementation of the prohibition, the DNSC later finds that all or none bids do not restrict competition and affect the market, it will be free to change its mind and allow all or none bids in the future. As stated earlier, this court cannot substitute its judgment for that of the proper agency officials when such a decision is not arbitrary or capricious or an abuse of discretion. Overall, the court finds the DNSC's decision to prohibit all or none bids to be reasonable and within the scope of authority granted to the agency.[3]

B. Defendant's Right to Use a Domestic Preference Provision

■■■ The next issue is whether or not the DNSC has the authority to include a domes-

tic preference provision in its solicitations. For the same reasons discussed in relation to the all or none provision, the court finds that the DNSC does have the legal ability to include such a preference. Mr. Connelly believes that without such a preference, market disruption could result. Again, he has a right to be wrong. However, as the preference was implemented in this particular solicitation, which was designed to be implemented through formal advertising, any award granted under it would be illegal. The reasons for this holding are discussed in greater detail under Section II.

II. Preliminary Injunction

■■■ In determining whether to grant a preliminary injunction, the court applies a four-part test which has been discussed in numerous comprehensive and well-written opinions of this Court. *See, e.g., Magellan Corp. v. United States,* 27 Fed.Cl. 446 (1993); *TRW Environmental Safety Sys., Inc., v. United States,* 16 Cl.Ct. 520 (1989). Under this standard, plaintiff must demonstrate the following: (1) a likelihood of success on the merits; (2) irreparable injury to plaintiff if defendant is not enjoined, including but not limited to the absence of an adequate remedy at law; (3) the harm to plaintiff outweighs the harm to defendant; and (4) the public interest is served by enjoining defendant. *Magnavox,* 26 Cl.Ct. at 1378 (citing *Zenith Radio Corp. v. United States,* 710 F.2d 806, 809 (Fed.Cir.1983)). Plaintiff bears the burden of proving it is entitled to such relief by clear and convincing evidence. *Baird,* 1 Cl. Ct. at 664; *Heli–Jet Corp., v. United States,* 2 Cl.Ct. 613 (1983). Plaintiff has raised two objections to the solicitation, each of which will be addressed separately. The first issue is the same one raised by defendant, namely, whether the DNSC has the authority to prohibit all or none bids. The second objection raised by plaintiff can be divided into two parts. First, does the government have the right to use a domestic preference provision altering the firm bid at time of opening rule.

---

**3.** In defendant's motion for summary judgment, the issue of laches is raised. Due to the court finding in favor of the government on the issue of the use of all or none bids, the court need not address the issue of laches.

Second, if defendant does possess such authority, did the DNSC implement it properly.

## A. Defendant's refusal to permit all or none bids

■ Plaintiff claims that defendant's refusal to allow all or none bids violates statutory requirements for the sale of surplus material. The Strategic and Critical Materials Stockpiling Act, 50 U.S.C. § 98 et seq., states that "[t]he purpose of the National Defense Stockpile is to serve the interest of national defense only. The National Defense Stockpile is not to be used for economic or budgetary purposes." *Id.* § 98a(c)(1). Further, "[t]o the maximum extent feasible . . . efforts shall be made in the acquisition and disposal of such materials . . . to protect the United States against avoidable loss." *Id.* § 98e(b). The 1997 National Defense Authorization Act contains the same language regarding the disposal of surplus material by the government. National Defense Authorization Act of 1997, Pub.L. No. 104–201, § 3303(c), 110 Stat. 2855–56.

However, as noted above, defendant's decision to prohibit all or none bids is well within the discretionary power given to the DNSC. Therefore, plaintiff has no chance of succeeding on the merits of its claim with respect to the ban on all or none bids. Plaintiff cannot obtain a preliminary injunction based on this claim and it is unnecessary to examine the remaining three elements of such a claim.

## B. Defendant's Use of the Domestic Preference Provision

Plaintiff also claims that the domestic preference provision is illegal. As noted above, the solicitation requires sealed bids and bases an award on the price bid. However, the solicitation states that bids for each line item must declare whether the bid is for Category A or Category B. In evaluating bids for each line item, if bids for both categories are received and the prices bid are identical, award goes to the Category A bidder. If the Category A price is higher, award goes to that bidder. If the Category B price is higher,

the Category A Bidder will be given an opportunity to match the price of the Category B Bidder for that line item. If the high Category A Bidder declines to match the Category B Bidder's price for that item and there is more than one Category A bid for that item, the opportunity to match the Category B price will be given to each Category A Bidder in turn. In the event all Category A Bidders decline to match the Category B price, award will be made to the Category B Bidder.

DLA–COBALT–005 IFB, ¶ B.7.c, at 7. Thus, bids submitted under seal, under a specified set of circumstances, could be modified after having been opened. This is the portion of the solicitation that plaintiff claims is illegal.

As stated above, the court finds that the DNSC has the authority to use such a domestic preference in solicitations for surplus materials. Thus, the issue now before the court is whether or not the particular use of such a preference is illegal under the circumstances.

### 1. Likelihood of success on the merits

■ Defendant's decision to allow certain bids to be modified after being opened should be upheld unless it is arbitrary and capricious or contrary to law. *Ray*, 55 F.3d at 608. For the reasons outlined below, the court finds that plaintiff has a likelihood of proving that the use of a domestic preference in a solicitation done through formal advertising, as here, violates the law.

The statute authorizing sales of surplus materials states that disposal of such materials "shall be made by formal advertising *or* competitive negotiation procedures." 50 U.S.C. § 98e(b) (emphasis added). In the solicitation at issue in this case, the government chose to proceed with a solicitation through formal advertising, also known as the sealed bid process. Although the FAR does not apply to government sales, the solicitation at issue is analogous to the procedures for sealed bidding on invitations for bids promulgated by the government for procurement, where the FAR governs. Like the sealed bid procedures for procurement, the

same five step process is used.[4] 48 C.F.R. § 14.101 (1996). The purpose of such a system is to ensure free and equal competitive bidding. Under such procedures, the government is not permitted to procure by auction because it destroys the competitive bid system. *See,* 44 Comp. Gen. 292 (1964). While the system here is not a true auction, there are many similarities. This system allows Category A bidders to submit bids not necessarily reflecting the bid amount they would otherwise submit. Such a bidder could submit a bid lower than that which they are actually willing to pay knowing that they will be offered a chance to increase their bid at a later time if a Category B bidder has exceeded their bid. This is in stark contrast to guidance given in the Competition in Contracting Act, which states that bids shall be evaluated without any discussions with the bidders. Pub.L. 98–369, Div. B, Title VII, July 18, 1984, 98 Stat. 1175 (codified as amended in scattered sections of 41 U.S.C. and 31 U.S.C.).

The Federal Acquisition Regulations prohibit altering bids after they are opened. Even when equal bids are received, the policy is to determine the award by lot instead of allowing modifications or clarifications as to who is better qualified. 48 C.F.R. 14.408–6 (1996). The overarching idea is to promote full and open competition. Restrictive provisions are allowable in only limited circumstances. 41 U.S.C. § 253a(a)(2) (1994); 10 U.S.C. § 2305(a)(1)(B) (1994). This policy is violated by allowing the type of modifications provided for in the solicitation.

Overall, the terms "formal advertising" and "competitive negotiation procedures" are terms of art. There are specific procedures and goals associated with each of these two distinct systems. Allowing bids to be modified after opening, a process which can occur under a system of competitive negotiation, has no place in a sealed bid, formally advertised solicitation. The two concepts are mutually exclusive and the wording of the statute indicated that the government is to use one of the two procedures, not a combination of both. Thus, even though the DNSC has the authority to make use of such a preference, it cannot do so, as it has attempted in the context of a solicitation by formal advertising.

For the above reasons, the court finds that plaintiff is likely to succeed on the merits of this aspect of its claim.

### 2. Irreparable Injury

Plaintiff claims it will be irreparably injured if defendant is not enjoined. Failure to issue a preliminary injunction will force plaintiff to submit a bid on a solicitation that it and the court believe is illegal, thus resulting in a void contract award. Additionally, plaintiff would incur costs in the preparation of such a bid which it could not recover. Finally, the opportunity to bid fairly and on equal terms for this award will be lost. Therefore, the court finds that plaintiff would suffer irreparable injury.

### 3. Balancing the Harms

The delay caused to defendant by the issuance of a preliminary injunction is not great. The only burden to defendant is a short delay in the sale while the merits of the case are considered. If the sale is allowed to proceed at that point, defendant is not greatly harmed and will be able to meet its revenue requirements regardless. If the sale is permanently enjoined, then there is no harm to defendant since the solicitation will have been found in violation of applicable statutes. The potential harm to plaintiff, as discussed above, is much greater. Plaintiff has therefore satisfied the third prong of the test.

### 4. Public Interest

Although the public interest is served by allowing sales to proceed expeditiously and with minimal judicial interference, there is also a countervailing interest in ensuring that such sales are conducted in conformity with applicable law and regulations. It is not in the public interest to allow a fundamentally flawed government solicitation to proceed when there are known defects which can be cured.

### CONCLUSION

For the above-stated reasons, this court concludes that defendant is entitled to sum-

4. These steps are: (1) preparation of invitations for bids; (2) publicizing the invitation for bids; (3) submission of bids; (4) evaluation of bids; and (5) contract award.

mary judgment on the issues of authority to prohibit all or none bids and on authority to utilize domestic preference provisions. Thus, the first count of plaintiff's complaint is dismissed. The second count of plaintiff's complaint can be divided into two distinct issues. The first is whether the government has a right to use a domestic preference provision which alters the firm bid rule at time of bid opening basis for awarding a contract. As stated, the court finds defendant does have the authority to utilize a domestic preference provision. However, the second part of this claim relates to the form in which the preference was implemented. On this aspect of plaintiff's second count, plaintiff has demonstrated, by clear and convincing evidence, that it is entitled to the requested relief. It is procedurally improper to combine elements of a formally advertised solicitation with that of a competitive negotiation solicitation. Therefore, plaintiff's motion for a preliminary injunction is granted, due to the procedurally improper solicitation. Defendant and its agencies, officers, employees, representatives, and attorneys, and all others acting in concert with or for defendant, are hereby ordered to suspend all further proceedings relating to the solicitation until this matter is finally concluded. Further, unless defendant demonstrates monetary damages will be incurred if wrongfully enjoined, no security is required from plaintiff. Service of this Order upon counsel for defendant shall be deemed service upon defendant, and all its agencies, officers, employees, representatives, and attorneys. As stated, defendant's motion for judgment on the record is rendered moot since the issues raised in that motion are fully addressed by the court's ruling on defendant's motion for summary judgment and plaintiff's motion for a preliminary injunction.

The court orders the parties to confer and to report back to the court as to how they wish to proceed by June 13, 1997.

**IT IS SO ORDERED.**