

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-2-1994

# Pansy v. Borough of Stroudsburg, et al.

Precedential or Non-Precedential:

Docket 93-7396

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Pansy v. Borough of Stroudsburg, et al." (1994). *1994 Decisions*. Paper 4.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/4

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

United States Court of Appeals
for the Third Circuit


No. 93-7396


JOHN A. PANSY,

                        Plaintiff/Appellee,

                    v.

BOROUGH OF STROUDSBURG; HAROLD A. BENTZONI;
    KATHRYN MIKELS; JOHN W. OSBORNE, II;
  WILLIAM REBER; MARY JEAN KNAPIK; MARYANN
  WEST KOWALSHYN; RICHARD F. OSSWALD;
            CARL R. ROGERS

                        Defendants/Appellees,

                    v.

OTTAWAY NEWSPAPERS, INC. t/a POCONO RECORD,
    RONALD F. BOUCHARD; PENNSYLVANIA
    NEWSPAPER PUBLISHERS ASSOCIATION,

                        Intervenors/Appellants.



On Appeal from the United States District Court
   for the Middle District of Pennsylvania
        (D.C. Civ. No. 91-00682)



Argued January 11, 1994

Before:  STAPLETON, COWEN and ALITO,
              Circuit Judges.

(Filed May 2, 1994)



George W. Westervelt, Jr. (argued)
304 Park Avenue, P.O. Box 549

Stroudsburg, PA  18360

          Counsel for Appellants
          Ottaway Newspapers, Inc.
          t/a Pcono Record and
          Ronald F. Bouchard

James A. Swetz
Cramer, Swetz & McManus
711 Sarah Street
Stroudsburg, PA  18360

          Counsel for Appellee
          John A. Pansy


Ralph A. Matergia, Esq. (argued)
Matergia & Dunn
530 Main Street
Stroudsburg, PA  18360

          Counsel for Appellees
          Borough of Stroudsburg
          Harold A. Bentzoni
          Kathryn Mikels
          John W. Osborne, II
          William Reber
          Mary Jean Knapik
          Maryann West Kowalyshyn
          Richard F. Osswald
          Carl R. Rogers

**OPINION OF THE COURT**


COWEN, <u>Circuit Judge</u>.


        This appeal raises several questions of first
impression in this court concerning the ability of intervenors to
challenge orders of confidentiality pertaining to settlement
agreements.  These questions are extremely important in light of
the widespread and increasing use by district courts of

2

confidentiality orders to facilitate settlements, and the consequential sacrifice of public access to the information deemed confidential by such orders.

Ottaway Newspapers, Inc. ("Ottaway"), The Pocono Record ("the Record"), Ronald F. Bouchard and the Pennsylvania Newspaper Publishers Association (collectively, "the Newspapers") filed this action in the district court seeking to intervene in an action that had been settled between John A. Pansy and the Borough of Stroudsburg ("the Borough"). The Newspapers' purpose for intervening was to gain access to the Settlement Agreement which was entered into between Pansy and the Borough. The Newspapers argued that either the Agreement was a judicial record to which it had a right of access, or that the Order of Confidentiality which the court entered concerning the Agreement should be modified or vacated. The district court ruled that the Newspapers' motion for intervention was untimely. In the alternative, the district court held that the Agreement was not a judicial record, and therefore not accessible under the right of access doctrine. The district court denied the Newspapers' Motion to Intervene and Motion to Reconsider, Vacate or Modify the Order of Confidentiality. This appeal followed.

For the reasons stated below, we will reverse the order of the district court and direct that the Newspapers be permitted to intervene. We will remand the case to the district court for proceedings consistent with this opinion.

3

JURISDICTION AND STANDARD OF REVIEW

The district court entered a final order denying the Motion to Intervene and the Motion to Amend, Vacate or Modify by the Newspapers. Accordingly, we have jurisdiction under 28 U.S.C. § 1291. See Bank of Am. Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assocs., 800 F.2d 339, 341 n.2 (3d Cir. 1986).

The standard of review for each issue raised in this appeal will be discussed in the analysis of the issue. Where this appeal raises a legal question, we exercise plenary review. Prisco v. Talty, 993 F.2d 21, 24 (3d Cir. 1993).

DISCUSSION

A. BACKGROUND

In May, 1991, Pansy filed an action in the district court pursuant to 42 U.S.C. § 1983 alleging that the Borough violated his civil rights. Prior to Pansy's filing that action, he had been Chief of the Borough's Police Department. While Chief, he was investigated and later arrested by agents of the Pennsylvania Attorney General's Office. Pansy was charged with offenses relating to the alleged improper handling of parking meter money. The Borough subsequently suspended him from the force and demoted him to patrolman. The demotion and suspension, in turn, led to Pansy's filing a civil rights action. Ultimately, Pansy was tried and acquitted of all criminal charges.

Pansy and the Borough agreed to settle the civil rights action and the Settlement Agreement was presented to and reviewed by the district court. The Newspapers were not involved with the

4

settlement. On June 5, 1992, the district court entered an order indicating that it had reviewed the terms of settlement and directing that the case be considered dismissed with prejudice upon the expiration of sixty days or consummation of settlement. The order also stated that "the terms of settlement are confidential and the parties hereby are ordered and directed to abide by the order of confidentiality." App. at 54-55. The Settlement Agreement was never filed with the district court.

On October 22, 1992, the Record sent the Borough a request for information pursuant to the Pennsylvania Right to Know Act ("the Act"), Pa. Stat. Ann. tit. 65, §§ 66.1-.4. (1959 & Supp. 1993). The request sought information and documents pertaining to the civil rights case, including the Settlement Agreement.

On November 25, 1992, the Borough sent a response to the Record which included some information concerning the monetary cost to the Borough in settling the case. However, the Borough refused to provide access to the Settlement Agreement itself, and related documents, ostensibly because the district court's June 5, 1992 Order of Confidentiality prohibited its divulgence. The Borough has continued to refuse to provide the Settlement Agreement to the Newspapers.

On December 23, 1992, the Newspapers filed a petition in the Court of Common Pleas of Monroe County, Pennsylvania, challenging the Borough's refusal to produce documents pursuant to §§ 66.3 and 66.4 of the Right to Know Act. By order of that

5

court, the state court litigation has been stayed pending the resolution of this case.

On December 23, 1992, the Newspapers also filed the motions in the district court which are the subject of this appeal. They filed a Motion to Intervene in the settled civil rights action between Pansy and the Borough, as well as a Motion to Reconsider, Vacate, or Modify the district court's June 5, 1992 Order. Specifically, the Newspapers sought the Settlement Agreement as a judicial record. In the alternative, they sought to modify or vacate the June 5, 1992 Order of Confidentiality so they could obtain the Settlement Agreement pursuant to the Pennsylvania Right to Know Act.

The district court concluded that the Motion to Intervene was untimely. Alternatively, the district court addressed the merits of the right of access claim. It found that even if intervention was proper, the Settlement Agreement was not a judicial record because it was never filed with the court and, therefore, the Newspapers had no right to obtain the Settlement Agreement under the right of access doctrine. The district court also denied the Motion to Reconsider, Vacate or Modify the Order of Confidentiality.

B. ANALYSIS

### 1. Standing

The appellees have not challenged the Newspapers' standing in this appeal. Nevertheless, we are obliged to consider whether the Newspapers have standing to intervene in

6

this action to either obtain the sought-after Settlement Agreement under the right of access doctrine, or to attack the Order of Confidentiality so that they may seek access to the document under the Pennsylvania Right to Know Act. The requirements for an Article III case or controversy were stated in Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 102 S. Ct. 752 (1982):

> Art. III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision.

Id. at 472, 102 S. Ct. at 758 (internal quotations and citations omitted).

We have routinely found, as have other courts, that third parties have standing to challenge protective orders and confidentiality orders[0] in an effort to obtain access to information or judicial proceedings. E.g., Brown v. Advantage Eng'g, Inc., 960 F.2d 1013, 1016 (11th Cir. 1992); Public Citizen v. Liggett Group Inc., 858 F.2d 775, 787 & n.12 (1st Cir. 1988), cert. denied, 488 U.S. 1030, 109 S. Ct. 838 (1989); In re Alexander Grant & Co. Litig., 820 F.2d 352, 354 (11th Cir. 1987);

---

[0]In this opinion, the term "confidentiality order" will be used to denote any court order which in any way restricts access to or disclosure of any form of information or proceeding, including but not limited to "protective orders", "sealing orders" and "secrecy orders". "Protective orders" properly denote court orders over information exchanged during discovery. See Fed. R. Civ. P. 26(c).

<u>United States v. Cianfrani</u>, 573 F.2d 835, 845 (3d Cir. 1978); <u>City of Hartford v. Chase</u>, 733 F. Supp. 533, 534 (D. Conn. 1990), <u>rev'd on other grounds</u>, 942 F.2d 130 (2d Cir. 1991). The Newspapers may have standing notwithstanding the fact that "they assert rights that may belong to a broad portion of the public at large. So long as the 'injury in fact' alleged by each intervenor is 'a distinct and palpable injury to himself,' standing should not be denied 'even if it is an injury shared by a large class of other possible litigants.'" <u>Cianfrani</u>, 573 F.2d at 845 (quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 501, 95 S. Ct. 2197, 2206 (1975)).

Moreover, to establish standing, it is not necessary for litigants to demonstrate that they will prevail on the merits of their claim. <u>See</u> <u>Warth</u>, 422 U.S. at 500, 95 S. Ct. at 2206. Therefore, in determining whether the Newspapers have standing, we need not determine that the Newspapers will ultimately obtain access to the sought-after Settlement Agreement. We need only find that the Order of Confidentiality being challenged presents an obstacle to the Newspapers' attempt to obtain access. The Newspapers have met the standing requirements in this case: they have shown that the putatively invalid Confidentiality Order which the district court entered interferes with their attempt to obtain access to the Settlement Agreement, either under the right of access doctrine or pursuant to the Pennsylvania Right to Know Act.

2. Intervention

8

The district court denied the Newspapers' Motion for Intervention. We normally review the district court's denial of the Newspapers' Motion for Intervention for abuse of discretion. Harris v. Pernsley, 820 F.2d 592, 597 (3d Cir.), cert. denied, 484 U.S. 947, 108 S. Ct. 336 (1987). However, because the question raised is whether the district court applied the correct legal standard for intervention, we exercise plenary review. Cf. Savarese v. Agriss, 883 F.2d 1194, 1200 (3d Cir. 1989).

The district court denied the Newspapers' Motion for Intervention for two reasons. First, it determined that the Motion for Intervention was untimely because the case had already been settled for at least six months. Second, it found that the Newspapers did not demonstrate that their interest in the case had anything in common with a question of law or fact in the main action and therefore did not meet the requirements of Fed. R. Civ. P. 24(b)(2).[0]

The district court applied incorrect legal standards in denying the Newspapers' Motion for Intervention. As to the district court's finding that the Newspapers have not shown that their claim has anything in common with a question of law or fact in the case, the district court ruled contrary to a forming consensus in the federal courts. We agree with other courts that

---

[0] Fed. R. Civ. P. 24(b) provides in part:

> **Permissive Intervention**. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.

have held that the procedural device of permissive intervention is appropriately used to enable a litigant who was not an original party to an action to challenge protective or confidentiality orders entered in that action.  E.g., Beckman Indus., Inc. v. International Ins. Co., 966 F.2d 470, 473-74 (9th Cir.), cert. denied, ___ U.S. ___, 113 S. Ct. 197 (1992); United Nuclear Corp. v. Cranford Ins. Co., 905 F.2d 1424, 1427 (10th Cir. 1990), cert. denied, 498 U.S. 1073, 111 S. Ct. 799 (1991); Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 783-87 (1st Cir. 1988), cert. denied, 488 U.S. 1030, 109 S. Ct. 838 (1989); Meyer Goldberg, Inc., of Lorain v. Fisher Foods, Inc., 823 F.2d 159, 161-64 (6th Cir. 1987); Martindell v. International Tel. & Tel. Corp., 594 F.2d 291, 294 (2d Cir. 1979); In re Beef Indus. Antitrust Litig., 589 F.2d 786, 788-89 (5th Cir. 1979); City of Hartford v. Chase, 733 F. Supp. 533, 534 (D. Conn. 1990), rev'd on other grounds, 942 F.2d 130 (2d Cir. 1991); In re Franklin Nat'l Bank Sec. Litig., 92 F.R.D. 468, 470-71 (E.D.N.Y. 1981), aff'd sub nom. Federal Deposit Ins. Corp. v. Ernst & Ernst, 677 F.2d 230 (2d Cir. 1982) [hereinafter FDIC].  In Beckman, the Court of Appeals for the Ninth Circuit stated:

> [S]pecificity, e.g., that the [intervenors'] claim involve . . . the same legal theory [that was raised in the main action], is not required when intervenors are not becoming parties to the litigation.  There is no reason to require such a strong nexus of fact or law when a party seeks to intervene only for the purpose of modifying a protective order.

966 F.2d at 474.[0] The reasoning in Beckman is persuasive, and we adopt it. We therefore reject the district court's conclusion that the Newspapers have not shown their claim has anything in common with a question of law or fact in the case, and therefore cannot intervene. By virtue of the fact that the Newspapers challenge the validity of the Order of Confidentiality entered in the main action, they meet the requirement of Fed. R. Civ. P. 24(b)(2) that their claim must have "a question of law or fact in common" with the main action.[0]

The district court's second reason for denying the Newspapers' motion for intervention was that the motion to intervene was untimely, as it was made approximately six and one-half months from the date of settlement. In support of its holding, the district court cited dicta from a footnote in an opinion by this court, Littlejohn v. Bic Corp., 851 F.2d 673, 677 n.7 (3d Cir. 1988), which stated that "'intervention is ancillary

[0]The Beckman court also noted that although permissive intervention ordinarily requires independent jurisdictional grounds, an independent jurisdictional basis is not required because intervenors do not seek to litigate a claim on the merits. 966 F.2d at 473. Thus, in cases where intervenors seek to modify an order of the court, the court has jurisdiction based on the fact that it already has the power to modify the protective order and no independent jurisdictional basis is needed. Id.

[0]We therefore do not follow dicta in our decision in Littlejohn v. Bic Corp., 851 F.2d 673 (3d Cir. 1988), which stated: "Third parties seeking access to the judicial record after the termination of an action may therefore be required to proceed by complaint or order to show cause." Id. at 677 n.7. That statement is dicta because, as the Littlejohn court pointed out, the intervention issue was not raised on appeal. Id. Of course, as an alternative to permissive intervention, parties may choose to proceed by complaint or order to show cause to challenge confidentiality orders.

11

and subordinate to a main cause and whenever an action is terminated, for whatever reason, there no longer remains an action in which there can be an intervention,'" id. (quoting Black v. Central Motors Lines, Inc., 500 F.2d 407, 408 (4th Cir. 1974)).

We do not follow the dicta quoted above from Littlejohn because it announces an inappropriate rule and is contrary to the majority of courts that have decided the issue. These courts have allowed intervention by parties for the limited purpose of modifying a confidentiality or protective order even after the underlying dispute between the parties has been settled. See, e.g., Beckman, 966 F.2d at 471, 473–75; Brown v. Advantage Eng'g, Inc., 960 F.2d 1013, 1014–16 (11th Cir. 1992); United Nuclear, 905 F.2d at 1426–29; Public Citizen, 858 F.2d at 783–87; Meyer Goldberg, 823 F.2d at 161–64; Stallworth v. Monsanto Co., 558 F.2d 257, 260–70 (5th Cir. 1977); In re Franklin Nat'l Bank Sec. Litig., 92 F.R.D. at 469–71; see Bank of Am. Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assocs., 800 F.2d 339, 342 n.2 (3d Cir. 1986).[0] Discussion in a recent decision by this court

---

[0] One case has been found which contradicts the general rule that intervenors will be granted permissive intervention to challenge confidentiality orders. In United States v. Kentucky Utils. Co., 927 F.2d 252 (6th Cir. 1991), the Court of Appeals for the Sixth Circuit expressed skepticism as to whether intervention to challenge a confidentiality order would be appropriate. The court stated:

> Because the papers [sought] are not in the court record, but are instead copies of private documents that came into the possession of the DOJ only for the limited purposes of discovery and were not safeguarded by a protective order during discovery, [the potential intervenor] faces a formidable burden in attempting to

12

reflects the growing consensus among the courts of appeals that intervention to challenge confidentiality orders may take place long after a case has been terminated. In <u>Leucadia, Inc. v. Applied Extrusion Technologies, Inc.</u>, 998 F.2d 157 (3d Cir. 1993), we stated that "a district court may properly consider a motion to intervene permissively for the limited purpose of modifying a protective order even after the underlying dispute between the parties has long been settled." <u>Id.</u> at 161 n.5. This recognition in <u>Leucadia</u>, in combination with the forming consensus in other courts of appeals, provides strong reasons to allow a district court to grant permissive intervention in order to allow litigation of ancillary issues even after a case has been concluded.

In <u>Public Citizen</u>, the Court of Appeals for the First Circuit reasoned that where an intervenor is litigating an

---

demonstrate that her desire for access to materials of such a private nature rises to the status of an interest of so significant a magnitude as to entitle her to participate as a party to the action and challenge the . . . order.

<u>Id.</u> at 255. It should be noted that the <u>Kentucky Utilities</u> court cited no authority for the above-quoted passage. It contains no analysis, nor does it articulate any workable standards, concerning whether a party may intervene in an action to challenge a protective or confidentiality order. It merely asserts the phrase "formidable burden". Moreover, as a matter of policy the holding in <u>Kentucky Utilities</u> is unacceptable since it makes it almost impossible for the public to intervene in actions even involving important public matters to challenge protective or confidentiality orders. We therefore cannot join the position taken by the Sixth Circuit in <u>Kentucky Utilities</u>.

13

ancillary issue, the potential for prejudice to the original parties due to the delay in intervention[0] is minimized:

> [A] factor to be considered is the prejudice to existing parties due to [a litigant's] delay in intervening. This factor encompasses the basic fairness notion that intervention should not work a "last minute disruption of painstaking work by the parties and the court." For purposes of this factor, therefore, it is necessary to ask <u>why</u> a would-be intervenor seeks to participate, for if the desired intervention relates to an ancillary issue and will not disrupt the resolution of the underlying merits, untimely intervention is much less likely to prejudice the parties. Here, of course, [the intervenor's] motion pertains to a particularly discrete and ancillary issue, as demonstrated by the fact that the merits of the case have been already concluded and are no longer subject to review. Because [the intervenor] sought to litigate only the issue of the protective order, and not to reopen the merits, we find that its delayed intervention caused little prejudice to the existing parties in this case.

858 F.2d at 786 (citations omitted).

This reasoning is persuasive and we adopt it. We also note that in cases dealing with access to information, the public and third parties may often have no way of knowing at the time a confidentiality order is granted what relevance the settling case has to their interests. Therefore, to preclude third parties from challenging a confidentiality order once a case has been settled would often make it impossible for third parties to have their day in court to contest the scope or need for confidentiality. We therefore expressly hold today what we observed in our opinion in <u>Leucadia</u>: "a district court may

_____

[0]Fed. R. Civ. P. 24(b) provides, in part, that in exercising its discretion in determining whether to allow permissive intervention, "the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

14

properly consider a motion to intervene permissively for the limited purpose of modifying [or vacating] a [confidentiality] order even after the underlying dispute between the parties has long been settled."  998 F.2d at 161 n.5.[0]

The facts of this case lead us to conclude that intervention should not be deemed untimely.  In United Nuclear, intervention was permitted approximately three years after the underlying action was settled and dismissed, 905 F.2d at 1427, and in Beckman, intervention was allowed approximately two years after the underlying case was terminated, 966 F.2d at 471, 473. In the instant case, there was only a six and one-half month delay between the time of settlement and the motion for

_____

[0]In Commonwealth of Pa. v. Rizzo, 530 F.2d 501 (3d Cir.), cert. denied, 426 U.S. 921, 96 S. Ct. 2628 (1976), we listed three factors to consider in determining whether a motion to intervene is timely: (1) how far the proceedings have gone when the movant seeks to intervene; (2) prejudice which resultant delay might cause to other parties; and (3) the reason for the delay.  Id. at 506.  In Delaware Valley Citizens' Council v. Commonwealth of Pa., 674 F.2d 970 (3d Cir. 1982), we also stated that "a motion to intervene after entry of a decree should be denied except in extraordinary circumstances," id. at 974. However, Rizzo and Delaware Valley involved parties seeking to intervene and litigate the merits of the underlying suit.  The standards articulated in Rizzo and Delaware Valley are therefore not helpful in cases such as the instant one, where the intervenors do not wish to litigate the merits of the underlying suit, but rather only seek to litigate an ancillary issue, such as a protective or confidentiality order.  For example, the first Rizzo factor will rarely be helpful in cases where the intervenor is challenging a confidentiality order over a settlement agreement, because the order usually takes effect upon the termination of an action.  Thus, to ask how far the proceedings have gone is pointless.  Therefore, although Rizzo, Delaware Valley and their progeny are good law, they do not control in cases such as the one which is the subject of this appeal, where the potential intervenors wish only to litigate a question ancillary to the underlying suit.

15

intervention.° This relatively short delay, in itself, leads us
to the conclusion that intervention should be permitted.°

### 3. The Right of Access Doctrine

Although the district court denied intervention by the
Newspapers, it made an alternative holding. Assuming that
intervention was proper, the district court considered the merits
of the Newspapers' challenge to the Order of Confidentiality and
their attempt to obtain access to the Settlement Agreement. The
district court determined that the Settlement Agreement was not a
"judicial record," and it therefore denied the Newspapers' motion
to obtain access to the Settlement Agreement under the right of
access doctrine.

We have previously recognized a right of access to
judicial proceedings and judicial records, and this right of
access is "beyond dispute." Littlejohn v. Bic Corp., 851 F.2d
673, 677-78 (3d Cir. 1988) (quoting Publicker Indus., Inc. v.
Cohen, 733 F.2d 1059, 1066 (3d Cir. 1984)). "The balancing of
factors for and against access is a decision committed to the

---

°We also note that the Record sent the Borough a request for
information pursuant to the Pennsylvania Right to Know Act on
October 22, 1992, just over four months from the date of
settlement. Only after the Borough refused to provide the Record
with the Settlement Agreement did the Record realize that court
action would be necessary. These facts indicate that the Record
was diligent in seeking the Settlement Agreement, and that its
motion for intervention therefore cannot be deemed untimely.
°We need not address whether in some circumstances a trial court,
in the exercise of its discretion, may rightly conclude that
untimeliness or other factors relating to the particular claimant
justify refusal of intervention where the intervenors seek to
contest an ancillary issue.

discretion of the district court, although it is not generally accorded the narrow review reserved for discretionary decisions based on first-hand observations." Bank of Am. Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assocs., 800 F.2d 339, 344 (3d Cir. 1986) (citations omitted). In this case, however, the district court reached its conclusion through a legal determination that the Settlement Agreement was not a "judicial record" accessible under the right of access doctrine. We will therefore exercise plenary review over the district court's legal determination. See 1st Westco Corp. v. School Dist. of Phila., 6 F.3d 108, 112 (3d Cir. 1993).

The Newspapers argue that the Settlement Agreement which Pansy and the Borough entered into is a "judicial record," accessible under the right of access doctrine. If the Settlement Agreement is a judicial record, then Rittenhouse would be binding and the Agreement should be released by the district court. In Rittenhouse, this court held that a settlement agreement deemed a judicial record is accessible under the right of access doctrine. 800 F.2d at 344-45. We specifically held that the strong presumption of access outweighed the interest in promoting settlements, which in the matter before us is the only interest which the Borough has argued in favor of maintaining the Order of Confidentiality. Id. Therefore, if the Settlement Agreement is a judicial record, it should be released by the district court itself under the right of access doctrine, and there would be no need for the Newspapers to demonstrate that the Settlement

17

Agreement is a public record under the Pennsylvania Right to Know Act.

However, our prior decisions preclude a finding that the Settlement Agreement is a judicial record accessible under the right of access doctrine. See Internal Operating Procedures of the United States Court of Appeals for the Third Circuit 9.1 (July 1990) ("It is the tradition of this court that the holding of a panel in a reported opinion is binding on subsequent panels."). In Enprotech Corp. v. Renda, 983 F.2d 17 (3d Cir. 1993), we indicated that when a settlement agreement is not filed with the court, it is not a "judicial record" for purposes of the right of access doctrine. Id. at 20-21. In Enprotech, we held that since the "Settlement Agreement ha[d] not been filed with, placed under seal, interpreted or enforced by the district court", it was not a judicial record. Id. at 20. The Enprotech court went on to hold: "Moreover, the Agreement will not become a part of the public record unless and until the district court may order the parties to comply with its terms." Id. at 21. The Enprotech Court so held even though the district court in that case specifically retained jurisdiction over the settlement agreement until its expiration so that it could enforce its terms. Id.

In the instant case, the Settlement Agreement which is subject to the Order of Confidentiality was never filed with, interpreted or enforced by the district court. The district court has not ordered any of the terms of the Settlement Agreement to be complied with. Accordingly, Enprotech controls

18

the instant case and leads us to conclude that the Settlement Agreement is not a judicial record, and the right of access doctrine cannot be a basis for the Newspapers to obtain access to the Agreement.  In contrast, in Rittenhouse we found that the settlement agreement was a judicial record because it had been filed with and enforced by the district court.  800 F.2d at 344–45.

Another decision by this court indicates that the Settlement Agreement is not a judicial record accessible under the right of access doctrine.  In Littlejohn v. Bic Corp., 851 F.2d 673 (3d Cir. 1988), we addressed the question of whether documents which were admitted into evidence and had become judicial records were accessible under the right of access doctrine after the underlying litigation had been settled and the documents had been returned to the party resisting disclosure. We stated:

> We . . . hold that, absent allegations of fraud or other extraordinary circumstances, trial exhibits that were restored to their owner after a case has been completely terminated and which were properly subject to destruction by the clerk of court are no longer judicial records within the "supervisory power" of the district court.

Id. at 683.  Under Littlejohn, even where there is no dispute that documents were at one time judicial records, once such documents are no longer part of the court file they lose their status as judicial records.[0]  Thus, in Littlejohn, as in

---

[0] But see Littlejohn, 851 F.2d at 688 (Scirica, J., dissenting). In his dissent, Judge Scirica stated:

Enprotech, we focused on the technical question of whether a document is physically on file with the court. If it is not, it is not a "judicial record." We pointed out in Leucadia that "[n]umerous other courts have also recognized the principle that the filing of a document gives rise to a presumptive right of public access." 998 F.2d at 161-62 (emphasis added). See also Rittenhouse, 800 F.2d at 345 ("Once a settlement is filed in the district court, it becomes a judicial record, and subject to the access accorded such records." (emphasis added)). In the matter presently before the court, the parties agree that the Settlement Agreement has never been filed with the court.

The Newspapers nevertheless argue that since the district court has entered an Order of Confidentiality over the Settlement Agreement, this in effect has converted the unfiled Settlement Agreement into a judicial record. This argument fails. Simply because a court has entered a confidentiality order over documents does not automatically convert those documents into "judicial records" accessible under the right of access doctrine. For example, when a court enters an order of

> Any member of the public, whether a student of the law, an interested observer, or a historian, will be required to assert his rights within two months or lose them forever. . . . I do not view a local rule permitting return or destruction of exhibits as controlling the determination of right of access. Rather, the district judge should be permitted to inquire whether the contested items are still available from any source. If the items exist, their character as judicial records renders them presumptively open to public examination, absent "improper purposes."

Id. (citation omitted).

protection over documents exchanged during discovery, and these documents have not been filed with the court, such documents are not, by reason of the protective order alone, deemed judicial records to which the right of access attaches. See Seattle Times Co. v. Rhinehart, 467 U.S. 20, 30-37, 104 S. Ct. 2199, 2206-10 (1984); Leucadia, 998 F.2d at 163 & n.9; Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1119-20 (3d Cir. 1986), cert. denied, 484 U.S. 976, 108 S. Ct. 487 (1987).

The district court in this case stated that "it is further ordered that the terms of the settlement are confidential and the parties hereby are ordered and directed to abide by the order of confidentiality." App. at 54-55. Therefore, the district court granted an order of confidentiality over the terms of the Settlement Agreement. It did not order the terms of the Settlement Agreement to be abided by the parties--nor could it, since the Settlement Agreement itself was never filed with the court.

The Order of Confidentiality is independent of any of the terms included within the Settlement Agreement, just as protective orders over discovery materials are independent of the items actually exchanged subject to such protective orders. Indeed, we have no way of knowing whether the Settlement Agreement itself includes a provision for confidentiality because the Settlement Agreement was never filed with the court and is not a part of the court record. It is therefore not possible for us to find, as Enprotech requires in order to deem a settlement agreement a judicial record, that the district court ordered the

21

parties to comply with the terms of the Settlement Agreement. 983 F.2d at 21 ("[T]he [Settlement] Agreement will not become a part of the public record unless and until the district court may order the parties to comply with its terms.").

The Newspapers further argue that the Settlement Agreement is a judicial record because the district court actually reviewed the Settlement Agreement before granting the Order of Confidentiality.  In its June 5, 1992 order, the district court stated: "[T]he parties having informed the Court that the . . . matter is settled and the Court having reviewed the terms of settlement, this action is hereby discontinued . . . ."  App. at 54 (emphasis added).  By virtue of the fact that the district court reviewed the Settlement Agreement before granting its order, the Newspapers argue this converts the Settlement Agreement into a judicial record.  In support of this position, the Newspapers cite the decision by the Court of Appeals for the First Circuit in FTC v. Standard Fin. Management Corp., 830 F.2d 404 (1st Cir. 1987).

In Standard Financial, the court held that "relevant documents which are submitted to, and accepted by, a court of competent jurisdiction in the course of adjudicatory proceedings, become documents to which the presumption of public access applies."  Id. at 409.  Even though the disputed documents were not part of the court file, id. at 405-407, 413, the Standard Financial court held that they were nevertheless accessible under the right of access doctrine because "[t]hey were duly submitted to the court", id. at 410, and "were relevant and material to the

22

matters sub judice", id.  The Newspapers argue that since the Settlement Agreement was duly submitted to the district court, and the district court based its June 5, 1992 Order partly in reliance on this submission, Standard Financial controls and the Settlement Agreement is accessible under the right of access doctrine.

The Court of Appeals for the First Circuit in Standard Financial has articulated a persuasive and perhaps desirable rule.  Moreover, it may well be that during the life of a case, the issue of whether a document is a judicial record should turn on the use the court has made of it rather than on whether it has found its way into the clerk's file.  However, when the "judicial record" issue arose in this case, final judgment had been entered and no possibility of an appeal remained.  As a result, we find this case to be indistinguishable from Littlejohn and we are bound by the Internal Operating Procedures of this court to follow that decision.  Internal Operating Procedures of the United States Court of Appeals for the Third Circuit 9.1 (July 1990).  In Littlejohn, this court held that exhibits that have been admitted into evidence and relied upon by the court do not remain judicial records after the case is closed and they are returned to the parties.  851 F.2d at 683.  We are therefore clearly not at liberty here to bestow judicial record status on the Settlement Agreement, which the court briefly perused and returned to the parties in a now closed case.  But see Littlejohn, 851 F.2d at 688 (Scirica, J., dissenting) (A "district judge should be permitted to inquire whether the

23

contested items are still available from <u>any</u> source.").  The

Settlement Agreement is not a "judicial record," and the district

court correctly concluded that the Newspapers cannot obtain

access to that document under the right of access doctrine.[0]

### 4. Challenging the Order of Confidentiality

The Newspapers also made a motion in the district court

to reconsider, vacate or modify the Confidentiality Order, as a

matter independent of the right of access doctrine.  The district

court denied the Newspapers' motion.  We review the grant or

modification of a confidentiality order for abuse of discretion.

<u>See</u> <u>Republic of Philippines v. Westinghouse Elec. Corp.</u>, 949 F.2d

653, 664 (3d Cir. 1991); <u>Smith v. Bic Corp</u>., 869 F.2d 194, 199

(3d Cir. 1989).  However, we exercise plenary review over the

district court's interpretation and application of the legal

standard for granting or modifying a confidentiality order.  <u>Cf.</u>

<u>Savarese v. Agriss</u>, 883 F.2d 1194 (3d Cir. 1989).

---

[0]The Newspapers make a technical argument as to why the
Settlement Agreement is a judicial record accessible under the
right of access doctrine.  Citing <u>Bank of Am. Nat'l Trust and</u>
<u>Savings Ass'n v. Hotel Rittenhouse Assocs.</u>, 800 F.2d 339, 344 (3d
Cir. 1986), the Newspapers argue that since in settling the case
the appellees did not meet the specific requirements of Fed. R.
Civ. P. 41(a), governing voluntary dismissal, the Settlement
Agreement must be considered a judicial record.  Although in
<u>Rittenhouse</u> we did state in dicta that documents relating to a
voluntary stipulation of dismissal under Fed. R. Civ. P. 41(a)(1)
would likely not be accessible under the right of access
doctrine, 800 F.2d at 344, we did not at all suggest that any
documents not relating to a Rule 41(a)(1) dismissal would
automatically be accessible under the right of access doctrine.
The Newspapers' argument overlooks the fact that the settlement
agreement in <u>Rittenhouse</u>, unlike the one in the case presently
before the court, was filed with the court.  800 F.2d at 344-45.
As the above discussion indicates, whether the relevant document
is in the court file is the critical inquiry.

24

Even if the Settlement Agreement is not a judicial record, the Newspapers seek to modify or vacate the Order of Confidentiality controlling the Settlement Agreement. Their reason for doing so is that if the Newspapers are successful in vacating the Order of Confidentiality, they will then be able to seek access to the Settlement Agreement under the Pennsylvania Right to Know Act, Pa. Stat. Ann. tit. 65, §§ 66.1–.4. (1959 & Supp. 1993), without interference by the federal court Order of Confidentiality.

It is important to note the practical difference between the Newspapers' failed attempt to obtain the Settlement Agreement under the right of access doctrine on the one hand, and on the other hand the Newspapers' attempt only to modify or vacate the Order of Confidentiality. If the Newspapers had been successful in demonstrating that the Settlement Agreement was a judicial record for purposes of the right of access doctrine, the Settlement Agreement would have been made available by the district court itself, as a judicial record. In contrast, if the Newspapers are successful in vacating the Order of Confidentiality, as a matter independent of the right of access doctrine, the district court will not then automatically grant access to the Settlement Agreement. Rather, the Order of Confidentiality would merely be vacated, and the Newspapers would then be free to seek access to the Settlement Agreement through other legal channels, without interference by the Order of Confidentiality. In fact, the Newspapers have already commenced a suit in Pennsylvania state court, seeking the Settlement

25

Agreement as a "public record" under the Pennsylvania Right to Know Act.  The state court stayed that action pending the outcome of this federal action.

If the Order of Confidentiality is vacated, then it appears that the Settlement Agreement will be made available by order of the state court pursuant to the Pennsylvania Right to Know Act.[0]  If the Order of Confidentiality is not vacated, then the state court would be unable to order the document accessible.  This is because even though the Settlement Agreement would likely be available under the Pennsylvania Right to Know Act, the state court would be obligated to respect the already-existing federal court Order of Confidentiality.[0]  From these observations, it is

---

[0]In Morning Call, Inc. v. Lower Saucon Township, 627 A.2d 297 (Pa. Commw. Ct. 1993), the Commonwealth Court of Pennsylvania held that a settlement agreement entered into between a township and a private party was a "public record" subject to disclosure under the Pennsylvania Right to Know Act.  Id. at 299-301.  The court so held even though the parties to the settlement agreement had included a non-disclosure clause within the settlement agreement.  Id. at 298.

[0]The Pennsylvania Right to Know Act provides that information restricted by order of a court is not a "public record" for the purposes of the Act.  Pa. Stat. Ann. tit. 65, § 66.1(2) (Supp. 1993).

Although neither the Full Faith and Credit Statute, 28 U.S.C. § 1738, nor the Full Faith and Credit Clause of the United States Constitution, U.S. Const. art. IV, § 1, mentions what obligations exist for state courts confronting federal court judgments, it is well recognized that state courts must give full faith and credit to federal court judgments.  E.g., Stoll v. Gottlieb, 305 U.S. 165, 170-71, 59 S. Ct. 134, 136-37 (1938); Crescent City Live-Stock Landing & Slaughter-House Co. v. Butchers' Union Slaughter-House & Live-Stock Landing Co., 120 U.S. 141, 146-47, 156-59, 7 S. Ct. 472, 474-75, 480-81 (1887).  The state court's obligation to respect a prior federal court order which conflicts with state law also follows from the principle that states cannot curtail the jurisdiction of the federal courts.  Janice Toran, Secrecy Orders and Government

26

clear that the Newspapers have an interest in vacating the Order of Confidentiality even though we have rejected their attempt to obtain the Settlement Agreement under the right of access doctrine.

It is well-established that a district court retains the power to modify or lift confidentiality orders that it has entered.  See, e.g., United Nuclear Corp. v. Cranford Ins. Co., 905 F.2d 1424, 1427 (10th Cir. 1990), cert. denied, 498 U.S. 1073, 111 S. Ct. 799 (1991); In re "Agent Orange" Prod. Liab. Litig., 821 F.2d 139, 145 (2d Cir.), cert. denied , 484 U.S. 953, 108 S. Ct. 344 (1987); Palmieri v. New York, 779 F.2d 861, 864-65 (2d Cir. 1985); In re Franklin Nat'l Bank Sec. Litig., 92 F.R.D. 468, 471 (E.D.N.Y 1981), aff'd sub nom. FDIC, 677 F.2d 230 (2d Cir. 1982).  The issue of whether an order of confidentiality should be modified is separable from the question concerning whether a settlement agreement subject to that order is a judicial record for purposes of the right of access doctrine. Cf., e.g., Beckman Indus., Inc. v. International Ins. Co., 966 F.2d 470, 471-76 (9th Cir. 1992); City of Hartford v. Chase, 942 F.2d 130, 134-37 (2d Cir. 1991) (allowing intervening third parties to challenge confidentiality order over documents not part of court file); Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1110-23 (3d Cir. 1986), cert. denied, 484 U.S. 976, 108 S. Ct. 487 (1987).  Therefore, although we have already determined that the Settlement Agreement is not available under the right of

_____

Litigants: "A Northwest Passage Around the Freedom of Information Act"?, 27 Ga. L. Rev. 121, 170-71 (1992).

27

access doctrine, we will consider whether the district court should have nevertheless modified or vacated the Order the Confidentiality which it ordered over the Settlement Agreement.

In favor of its position that the Order of Confidentiality should be vacated, the Newspapers argue that the district court lacked the power to enter an order of confidentiality over a document which is not in the court file nor incorporated into an order of the court. We reject this argument. Courts have inherent power to grant orders of confidentiality over materials not in the court file. In Seattle Times Co. v. Rhinehart, 467 U.S. 20, 104 S. Ct. 2199 (1984), the Supreme Court confirmed that courts have the power to grant confidentiality orders over material not on file with the court, id. at 33 n.19, 104 S. Ct. at 2207 n.19, holding that "we have no question as to the court's jurisdiction to [enter protective orders] under the inherent 'equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices,'" id. at 35, 104 S. Ct. at 2209 (quoting International Prods. Corp. v. Koons, 325 F.2d 403, 407–08 (2d Cir. 1963)). See also, e.g., FDIC, 677 F.2d at 232 ("It is beyond question that a court may issue orders prohibiting disclosure of documents or information.").

The Newspapers also challenge the validity of the Order of Confidentiality because the Order was not entered pursuant to a rule of civil procedure or any other court rule. The Order was entered over the Settlement Agreement, while the Federal Rules of Civil Procedure only address protective orders over materials

28

exchanged during discovery, Fed. R. Civ. P. 26(c).  However, in

Seattle Times, the Supreme Court made clear that courts have

inherent equitable power to grant confidentiality orders, whether

or not such orders are specifically authorized by procedural

rules.  467 U.S. at 35, 104 S. Ct. at 2209.

Nevertheless, simply because courts have the power to

grant orders of confidentiality does not mean that such orders

may be granted arbitrarily.  Disturbingly, some courts routinely

sign orders which contain confidentiality clauses without

considering the propriety of such orders, or the countervailing

public interests which are sacrificed by the orders.[0]  Because

---

[0]In City of Hartford v. Chase, 942 F.2d 130 (2d Cir. 1991), Judge
Pratt, in a concurring opinion, made the following insightful
observations:

> A . . . troubling tendency accompanies the increasing
> frequency and scope of confidentiality agreements that
> are ordered by the court.  These agreements are reached
> by private parties and often involve materials and
> information that is never even presented to the court.
> With the signature of a federal judge, however, they
> are converted into a powerful means of maintaining and
> enforcing secrecy.  Once signed, a confidentiality
> order, which has converted a private agreement into an
> order of the court, requires the court to use its
> contempt power to enforce the private agreement. . . .
> [B]ecause they often involve information not in the
> control of the court, and may . . . implicate public
> concerns, confidentiality orders, when not subject to
> proper supervision, have a great potential for abuse.
> For this reason, judges should review such agreements
> carefully and skeptically before signing them.

Id. at 137–38 (Pratt, J., concurring).  See also Toran, supra
note 13, at 124–26; Brian T. FitzGerald, Note, Sealed v. Sealed:
A Public Court System Going Secretly Private, 6 J.L. & Pol. 381,
382 (1990) ("Unfortunately, the incidence of secrecy in the
judicial process appears to be on the rise, particularly in the
complex litigation area.  Equally disturbing is the trend for

29

defendants request orders of confidentiality as a condition of settlement, courts are willing to grant these requests in an effort to facilitate settlement without sufficiently inquiring into the potential public interest in obtaining information concerning the settlement agreement. The public's interest is particularly legitimate and important where, as in this case, at least one of the parties to the action is a public entity or official.

In this case, the district court made no findings for the record when it initially granted the Order of Confidentiality, and apparently did not balance the competing public and privacy interests before entering the Order. In denying the Newspapers' Motion to Reconsider, Vacate or Modify the Order, the district court did not explain why the need for confidentiality outweighed the Newspapers' interest in obtaining access to the Settlement Agreement pursuant to the Pennsylvania Right to Know Act.[0] We must determine whether the district court appropriately exercised its discretion in granting and maintaining the Order of Confidentiality.

In the context of discovery, it is well-established that a party wishing to obtain an order of protection over discovery material must demonstrate that "good cause" exists for the order of protection. Fed. R. Civ. P. 26(c); Smith v. Bic Corp., 869 F.2d 194, 199 (3d Cir. 1989). In this case, the Order

_____

parties to condition any pre-trial settlement on the court's granting a total sealing order covering all materials in the court's possession." (footnotes omitted)).
[0]See supra note 12.

30

of Confidentiality was not entered over discovery materials, but rather over a settlement agreement.  Protective orders over discovery materials and orders of confidentiality over matters relating to other stages of litigation have comparable features and raise similar public policy concerns.  All such orders are intended to offer litigants a measure of privacy, while balancing against this privacy interest the public's right to obtain information concerning judicial proceedings.  Also, protective orders over discovery and confidentiality orders over matters concerning other stages of litigation are often used by courts as a means to aid the progression of litigation and facilitate settlements.  Protective orders and orders of confidentiality are functionally similar, and require similar balancing between public and private concerns.  We therefore exercise our inherent supervisory power[0] to conclude that whether an order of confidentiality is granted at the discovery stage or any other

---

[0]"While we adhere firmly to the view that our supervisory power should not be invoked lightly, we believe that circumstances warrant its application here."  Sowell v. Butcher & Singer, Inc., 926 F.2d 289, 295 (3d Cir. 1991) (requiring district courts entering a directed verdict to set forth an explanation for the court's order).  The Federal Rules of Civil Procedure do not discuss confidentiality orders outside the context of discovery. See Fed. R. Civ. P. 26(c) (protective orders).  "In the absence of procedural rules specifically covering a situation, the court may, pursuant to its inherent power . . . fashion a rule not inconsistent with the Federal Rules."  Franquez v. United States, 604 F.2d 1239, 1244-45 (9th Cir. 1979) (footnote omitted).  If, as we have recognized above, a district court has inherent power to enter orders of confidentiality outside the context of discovery despite the fact that such orders are not made pursuant to any federal rule, it is appropriate for an appellate court to exercise its supervisory power to ensure that such orders are not granted arbitrarily.

stage of litigation, including settlement, good cause must be demonstrated to justify such orders.  Cf. City of Hartford v. Chase, 942 F.2d 130, 136 (2d Cir. 1991) ("We do not . . . give parties carte blanche either to seal documents related to a settlement agreement or to withhold documents they deem so 'related.'  Rather, the trial court--not the parties themselves-- should scrutinize every such agreement involving the sealing of court papers and [determine] what, if any, of them are to be sealed, and it is only after very careful, particularized review by the court that a Confidentiality Order may be executed.").

"Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure.  The injury must be shown with specificity." Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984).  "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not support a good cause showing.  Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986), cert. denied, 484 U.S. 976, 108 S. Ct. 487 (1987).  The burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the order.  Id. at 1122.[0]

---

[0] However, because of the benefits of umbrella protective orders in cases involving large-scale discovery, the court may construct a broad umbrella protective order upon a threshold showing by the movant of good cause.  Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1122 (3d Cir. 1986), cert. denied, 484 U.S. 976, 108 S. Ct. 487 (1987).  After delivery of the documents, the opposing party would have the opportunity to indicate precisely which documents it believed not to be confidential, and the party seeking to maintain the seal would have the burden of proof with respect to those documents.  Id.

In considering whether good cause exists for a protective order, the federal courts have generally adopted a balancing process. Arthur R. Miller, <u>Confidentiality, Protective Orders, and Public Access to the Courts</u>, 105 Harv. L. Rev. 427, 432-33 (1991). The balancing conducted in the discovery context should be applied by courts when considering whether to grant confidentiality orders at any stage of litigation, including settlement:

> [T]he court . . . must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled. When the risk of harm to the owner of [a] trade secret or confidential information outweighs the need for discovery, disclosure [through discovery] cannot be compelled, but this is an infrequent result.
> Once the court determines that the discovery policies require that the materials be disclosed, the issue becomes whether they should "be disclosed only in a designated way," as authorized by the last clause of Rule 26(c)(7) . . . . Whether this disclosure will be limited depends on a judicial balancing of the harm to the party seeking protection (or third persons) and the importance of disclosure to the public. Courts also have a great deal of flexibility in crafting the contents of protective orders to minimize the negative consequences of disclosure and serve the public interest simultaneously.

<u>Id.</u> at 433-35 (footnotes omitted). "The most common kind of order allowing discovery on conditions is an order limiting the persons who are to have access to the information disclosed and the use to which these persons may put the information." 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2043, at 305 (1970).

One interest which should be recognized in the balancing process is an interest in privacy. <u>See</u> <u>Seattle Times</u>

Co. v. Rhinehart, 467 U.S. 20, 34-36, 104 S. Ct. 2199, 2208-09 (1984).  It is appropriate for courts to order confidentiality to prevent the infliction of unnecessary or serious pain on parties who the court reasonably finds are entitled to such protection.  In this vein, a factor to consider is whether the information is being sought for a legitimate purpose or for an improper purpose.  However, privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny.  Cf. United States v. Smith, 776 F.2d 1104, 1114 (3d Cir. 1985) ("[T]he public has a substantial interest in the integrity or lack of integrity of those who serve them in public office.").[0]

> While preventing embarrassment may be a factor satisfying the "good cause" standard,
>> an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious.  As embarrassment is usually thought of as a nonmonetizable harm to individuals, it may be especially difficult for a business enterprise, whose primary measure of well-being is presumably monetizable, to argue for a protective order on this ground.

Cipollone, 785 F.2d at 1121.  Circumstances weighing against confidentiality exist when confidentiality is being sought over information important to public health and safety, e.g., Miller, 105 Harv. L. Rev. at 478, and when the sharing of information

---

[0] See also Vassiliades v. Israely, 714 F. Supp. 604, 606 (D. Conn. 1989) ("Every lawsuit has the potential for creating some adverse or otherwise unwanted publicity for the parties involved. It is simply one of the costs attendant to the filing of an action.").

among litigants would promote fairness and efficiency, e.g., id. at 490.

A factor which a court should consider in conducting the good cause balancing test is whether a party benefitting from the order of confidentiality is a public entity or official. Similarly, the district court should consider whether the case involves issues important to the public. If a settlement agreement involves issues or parties of a public nature, and involves matters of legitimate public concern, that should be a factor weighing against entering or maintaining an order of confidentiality. See, e.g., FTC. v. Standard Fin. Management Corp., 830 F.2d 404, 412 (1st Cir. 1987) (threshold for sealing is elevated because the case involves a government agency and matters of public concern).[0] On the other hand, if a case

_____

[0]See also Johnson v. Greater Southeast Community Hosp. Corp., 951 F.2d 1268, 1277-78 (D.C. Cir. 1991); Arkwright Mutual Ins. Co. v. Garrett & West, Inc., 782 F. Supp. 376, 381 (N.D. Ill. 1991) ("The courts are public institutions and their proceedings should be public unless a compelling argument for secrecy can be made. The matters with which this case is concerned are of significant and legitimate public concern. . . . The public has a right to know of this resolution."); City of Hartford v. Chase, 733 F. Supp. 533, 536 n.5 (D. Conn. 1990) ("Where the parties are private, the right to rely on confidentiality in their dealings is more compelling than where a government agency is involved, as the public has a countering interest in, and thus the claim of access to the conduct of public business by a governmental agency."), rev'd, 942 F.2d 130 (2d Cir. 1991); United States v. Kentucky Utils. Co., 124 F.R.D. 146, 150 (E.D. Ky. 1989) ("[The parties] attempt to assume the posture of private parties who have settled a case and have a right of privacy in documents maintained outside the court record. . . . Here, however, the parties are not private parties. One of the parties is the federal government."), rev'd, 927 F.2d 252 (6th Cir. 1991); In re "Agent Orange" Prod. Liab. Litig., 99 F.R.D. 645, 648-50 (E.D.N.Y. 1983).

35

involves private litigants, and concerns matters of little legitimate public interest, that should be a factor weighing in favor of granting or maintaining an order of confidentiality.

In this balancing process, the issue arises of how much weight should be assigned the interest in encouraging settlements. District courts should not rely on the general interest in encouraging settlement, and should require a particularized showing of the need for confidentiality in reaching a settlement. Cf. Bank of Am. Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assocs., 800 F.2d 339, 346 (3d Cir. 1986) (requiring particularized showing of need for secrecy to further settlement in a right of access doctrine case). Even when a particularized need for confidentiality is put forth by the parties, the interest in furthering settlement should only be one factor in the district court's determination. This is because, as one court put it,

> settlements will be entered into in most cases whether or not confidentiality can be maintained. The parties might prefer to have confidentiality, but this does not mean that they would not settle otherwise. For one thing, if the case goes to trial, even more is likely to be disclosed than if the public has access to pretrial matters.

United States v. Kentucky Utils. Co., 124 F.R.D. 146, 153 (E.D. Ky. 1989), rev'd, 927 F.2d 252 (6th Cir. 1991).[0]

---

[0]Accord Anne-Therese Bechamps, Note, Sealed Out-of-Court Settlements: When Does the Public Have a Right to Know?, 66 Notre Dame L. Rev. 117, 130 (1990) ("The incentives for settling, such as saving time and expense and avoiding the publicity of a trial, are still valid whether or not the parties are allowed to seal the case files."). Cf. Wilson v. American Motors Corp., 759 F.2d 1568 (11th Cir. 1985). In Wilson, the court acknowledged that

36

Moreover, if parties cannot demonstrate good cause for a court order of confidentiality over the terms of settlement, they have the option of agreeing privately to keep information concerning settlement confidential, and may enforce such an agreement in a separate contract action.[⁰] See, e.g., Marine Midland Realty Credit Corp. v. LLMD of Michigan, Inc., 821 F. Supp. 370, 371-74 (E.D. Pa. 1993). Although it is more arduous to commence a new action to enforce a settlement agreement than to rely on the court's contempt power to enforce a court order of confidentiality, it must be remembered that balanced against the interest of settlement is the interest of the public to have access to information concerning judicial proceedings. Thus, to the extent that fewer orders of confidentiality are granted, and to the extent that parties may have to more often enforce orders of confidentiality in private contract suits, we believe that this may in fact be preferable to the current trend of increasing judicial secrecy.

The factors discussed above are unavoidably vague and are of course not exhaustive. Although the balancing test discussed above may be criticized as being ambiguous and likely to lead to unpredictable results, we believe that such a

---

courts should encourage settlements. Id. at 1571 n.4. Nevertheless, the court said that encouraging monetary settlement between the parties was not even entitled to consideration in deciding whether to seal the record. Id.
[⁰]In some circumstances, a private agreement to keep terms of a settlement confidential may be unenforceable because it violates public policy. E.g., Anchorage Sch. Dist. v. Anchorage Daily News, 779 P.2d 1191, 1193 (Alaska 1989) (confidentiality provision unenforceable because it violated public records disclosure statutes).

balancing test is necessary to provide the district courts the flexibility needed to justly and properly consider the factors of each case.

> Discretion should be left with the court to evaluate the competing considerations in light of the facts of individual cases.  By focusing on the particular circumstances in the cases before them, courts are in the best position to prevent both the overly broad use of [confidentiality] orders and the unnecessary denial of confidentiality for information that deserves it . . . .

Miller, 105 Harv. L. Rev. at 492.

To facilitate effective appellate review of a district court decision of whether to grant or modify an order of protection or confidentiality, a district court should articulate on the record findings supporting its judgment.[0]  In appropriate cases, the district court may seal that portion of the record which contains its findings, for in some circumstances the court's articulation of its findings might destroy the very confidentiality being sought.

In determining whether to modify an already-existing confidentiality order, the parties' reliance on the order is a relevant factor.  E.g., Anne-Therese Bechamps, Note, Sealed Out of Court Settlements: When Does the Public Have a Right to Know?, 66 Notre Dame L. Rev. 117, 130 (1990); see also, e.g., City of

---

[0]We have, when appropriate, exercised our inherent supervisory power to require the district courts to provide an explanation for certain types of orders to assist our statutory function of appellate review.  E.g., Sowell v. Butcher & Singer, Inc., 926 F.2d 289, 295 (3d Cir. 1991) (orders granting directed verdicts); Vadino v. A. Valey Eng'rs, 903 F.2d 253, 258-59 (3d Cir. 1990) (orders granting summary judgment).

Hartford v. Chase, 942 F.2d 130, 136 (2d Cir. 1991).[0] However, there is a split in authority on the weight to be accorded the reliance interest.

The Court of Appeals for the Second Circuit has announced a stringent standard for modification, holding that a confidentiality order can only be modified if an extraordinary circumstance or compelling need warrants the requested modification. City of Hartford, 942 F.2d at 135-36; Palmieri v. New York, 779 F.2d 861, 864-66 (2d Cir. 1985); Federal Deposit Ins. Corp. v. Ernst & Ernst, 677 F.2d 230, 232 (2d Cir. 1982).[0]

Other courts of appeals have rejected this stringent standard, have held that a more lenient test for modification applies, but have failed to articulate precisely what that standard is. E.g., Beckman Indus., Inc. v. International Ins. Co., 966 F.2d 470, 475-76 (9th Cir.), cert. denied, ___ U.S. ___, 113 S. Ct 197 (1992); United Nuclear Corp. v. Cranford Ins. Co., 905 F.2d 1424, 1428 (10th Cir. 1990), cert. denied, 498 U.S. 1073, 111 S. Ct. 799 (1991); Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 791 (1st Cir. 1988), cert. denied, 488 U.S. 1030, 109 S. Ct. 838 (1989); see Meyer Goldberg, Inc. of Lorain v. Fisher Foods, Inc., 823 F.2d 159, 163-64 (6th Cir. 1987).

---

[0]The fact that the parties' reliance becomes relevant later on illustrates how important it is for courts to initially conduct a proper balancing analysis to determine whether a confidentiality order should be granted.
[0]The Court of Appeals for the Sixth Circuit has apparently adopted the Second Circuit's standard. See United States v. Kentucky Utils. Co., 927 F.2d 252, 255 (6th Cir. 1991). But see Meyer Goldberg, Inc. of Lorain v. Fisher Foods, Inc., 823 F.2d 159, 163-64 (6th Cir. 1987).

We agree with these courts that the standard of the Court of Appeals for the Second Circuit for modification is too stringent. The appropriate approach in considering motions to modify confidentiality orders is to use the same balancing test that is used in determining whether to grant such orders in the first instance,[0] with one difference: one of the factors the court should consider in determining whether to modify the order is the reliance by the original parties on the confidentiality order. The parties' reliance on an order, however, should not be outcome determinative, and should only be one factor that a court considers when determining whether to modify an order of confidentiality. "[E]ven though the parties to [a] settlement agreement have acted in reliance upon that order, they [do] so with knowledge that under some circumstances such orders may be modified by the court." City of Hartford, 942 F.2d at 138 (Pratt, J., concurring).

> The extent to which a party can rely on a protective order should depend on the extent to which the order induced the party to allow discovery or to settle the case. For instance, reliance would be greater where a trade secret was involved, or where witnesses had testified pursuant to a protective order without invoking their Fifth Amendment privilege. . . .
> . . . Reliance will be less with a blanket order, because it is by nature overinclusive.

---

[0] Cf. Leucadia, Inc. v. Applied Extrusion Technologies, Inc., 998 F.2d 157, 166 (3d Cir. 1993) ("Although our decision [in a previous case] concerned the challenge by a party to the confidentiality designation made by its opponent, our reasoning applies with equal force when a non-party moves to intervene in a pending or settled lawsuit for the limited purpose of modifying a protective order and inspecting documents filed under seal.").

40

Beckman, 966 F.2d at 475-76 (citation omitted).[°]

"[R]eliance on [confidentiality] orders [will] not insulate those orders from subsequent modification or vacating if the orders were improvidently granted ab initio. . . . [N]o amount of official encouragement and reliance thereon could substantiate an unquestioning adherence to an order improvidently granted." Palmieri, 779 F.2d at 865. "Improvidence in the granting of a protective order is [a] justification for lifting or modifying the order." In re "Agent Orange" Prod. Liab. Litig., 821 F.2d 139, 148 (2d Cir.), cert. denied, 484 U.S. 953, 108 S. Ct. 344 (1987). It would be improper and unfair to afford an order presumptive correctness if it is apparent that the court did not engage in the proper balancing to initially determine whether the order should have been granted.[°]

The party seeking to modify the order of confidentiality must come forward with a reason to modify the order. Once that is done, the court should then balance the interests, including the reliance by the original parties to the order, to determine whether good cause still exists for the order.

> If access to protected [material] can be granted
> without harm to legitimate secrecy interests, or if no
> such interests exist, continued judicial protection

[°]Accord Public Citizen, 858 F.2d at 790 ("Although . . . blanket protective orders may be useful in expediting the flow of pretrial discovery materials, they are by nature overinclusive and are, therefore, peculiarly subject to later modification.").
[°]But see Mokhiber v. Davis, 537 A.2d 1100, 1116 n.15 (D.C. 1988) ("[I]t is quite proper for the trial court to place upon the attacking party the burden of showing that no such 'good cause' in fact existed; that is, the presumption in favor of the correctness of trial court actions is operative.").

cannot be justified.  In that case, access should be granted even if the need for the protected materials is minimal.  When that is not the case, the court should require the party seeking modification to show why the secrecy interests deserve less protection than they did when the order was granted.  Even then, however, the movant should not be saddled with a burden more onerous than explaining why his need for the materials outweighs existing privacy concerns.

Note, Nonparty Access to Discovery Materials in the Federal Courts, 94 Harv. L. Rev. 1085, 1092 (1981), cited with approval in Meyer Goldberg, Inc. of Lorain v. Fisher Foods, Inc., 823 F.2d 159, 163 (6th Cir. 1987).

This case presents another factor which must be considered in the good cause balancing test.  The Settlement Agreement to which the Newspapers are seeking access would, but for the Confidentiality Order, likely be accessible under the Pennsylvania Right to Know Act, Pa. Stat. Ann. tit. 65, §§ 66.1-.4 (1959 & Supp. 1993).[0]  This case thus illustrates how confidentiality orders can frustrate, if not render useless, federal and state freedom of information laws.[0]  When a court orders confidentiality in a suit involving a governmental entity,

[0]See supra notes 12-13.
[0]The federal Freedom of Information Act ("FOIA") is codified at 5 U.S.C. § 552.  All fifty states have some form of freedom of information legislation.  Toran, supra note 13, at 129 n.38 (1992).

Federal courts are explicitly exempt from the Freedom of Information Act's coverage.  5 U.S.C. § 551(1)(B).  In GTE Sylvania, Inc. v. Consumers Union of the United States, Inc., 445 U.S. 375, 100 S. Ct. 1194 (1980), the Supreme Court held that a federal agency which had been previously ordered by a court not to disclose information was not required to release such information under the FOIA.  Id. at 386-87, 100 S. Ct. at 1201-02.  It is precisely because courts have the power to trump freedom of information laws that they should exercise this power judiciously and sparingly.

as the district court in this case did, there arises a troublesome conflict between the governmental entity's interest as a litigant and its public disclosure obligations. The difficult problems created by such a conflict have finally received scholarly attention. <u>See generally</u> Janice Toran, <u>Secrecy Orders and Government Litigants: "A Northwest Passage Around the Freedom of Information Act"?</u>, 27 Ga. L. Rev. 121 (1992). In this case, the Newspapers have had to endure considerable time and expense to obtain access to information which, but for the Order of Confidentiality, is likely available under the applicable freedom of information law.[0] Because the Newspapers have been forced to challenge the Order of Confidentiality, many months have passed since they made their initial request for the desired documents. This case thus illustrates the need for increased judicial awareness of the public interest in access to information under relevant freedom of information laws. Accordingly,

> where [a governmental entity] is a party to litigation, no protective, sealing or other confidentiality order shall be entered without consideration of its effect on disclosure of [government] records to the public under [state and federal freedom of information laws]. An order binding [governmental entities] shall be narrowly drawn to avoid interference with the rights of the public to obtain disclosure of [government] records and shall provide an explanation of the extent to which the order is intended to alter those rights.

<u>Id.</u> at 182.

To provide some measure of uniformity and predictability of outcome in this important area, we hold that

_____

[0]<u>See</u> <u>supra</u> note 12.

43

where it is likely that information is accessible under a relevant freedom of information law, a strong presumption exists against granting or maintaining an order of confidentiality whose scope would prevent disclosure of that information pursuant to the relevant freedom of information law. In the good cause balancing test, this strong presumption tilts the scales heavily against entering or maintaining an order of confidentiality. To avoid complicated inquiries as to whether certain information would in fact be available under a freedom of information law, courts may choose to grant conditional orders. For example, a court could order that the order of confidentiality will become inoperative if the information it orders confidential is later determined to be available under a freedom of information law. Or a court could grant an order of confidentiality while specifying that the scope of the confidentiality order does not extend so as to prevent disclosure pursuant to any freedom of information law. Courts have discretion to fashion such orders according to the needs and circumstances of each case.

We acknowledge the important role that court-aided settlement plays in our overburdened court system, and we realize that a strong presumption against confidentiality orders when freedom of information laws are implicated may interfere with the ability of courts to successfully encourage the settlement of cases. However, we believe that a strong presumption against entering or maintaining confidentiality orders strikes the appropriate balance by recognizing the enduring beliefs underlying freedom of information laws: that an informed public

44

is desirable, that access to information prevents governmental abuse and helps secure freedom, and that, ultimately, government must answer to its citizens. Neither the interests of parties in settling cases, nor the interests of the federal courts in cleaning their dockets, can be said to outweigh the important values manifested by freedom of information laws.

In the case before us, the district court made no findings for the record supporting its initial grant of the Order of Confidentiality. The district court apparently did not conduct any balancing test at all before signing the Order. The Order of Confidentiality was thus improvidently granted, and the reliance interest of the parties in the confidentiality of the Settlement Agreement must be considered weak in this case. Moreover, in denying the Newspapers' Motion to Reconsider, Vacate or Modify the Order of Confidentiality, the district court again did not articulate any findings demonstrating good cause for the Order. The district court noted in passing that some information concerning the cost of the settlement to the Borough has been made public. But it never explained why the Newspapers' interest in obtaining access to the Settlement Agreement itself under the Pennsylvania Right to Know Act was outweighed by the need for confidentiality. The entry of the Order of Confidentiality therefore did not reflect the proper exercise of discretion by the district court.[0]

_____

[0] Because the Order of Confidentiality was ordered over a settlement agreement that was never filed with the court, and the order of confidentiality did not close a judicial proceeding to the public or seal judicial records, we do not apply the

45

Because we have provided guidance in a previously unchartered area, we will remand the case to the district court and provide it an opportunity to determine whether there are circumstances justifying an order of confidentiality over the Settlement Agreement. This case involves a governmental body, a public official, and a Settlement Agreement which is likely available under the Pennsylvania Right to Know Act. Given these facts, it would be unusual if on remand the district court were to find that circumstances exist which justify the Order of Confidentiality being maintained over the Settlement Agreement, but we do not foreclose that determination.[0]

We will reverse the district court's order denying intervention, dated May 13, 1993. We will remand the case to the district court with a direction that the Newspapers be permitted

---

standards we have articulated in our line of cases dealing with access to judicial proceedings and documents. E.g., Miller v. Indiana Hosp., 16 F.3d 549, 551 (3d Cir. 1994); Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1071–75 (3d Cir. 1984); United States v. Criden, 675 F.2d 550, 554–62 (3d Cir. 1982).

Also, the Newspapers have not challenged the Order of Confidentiality as a prior restraint or "gag order", and we therefore do not conduct any prior restraint analysis under the First Amendment. We note that in this case, a prior restraint claim by the Newspapers would lack merit because none of the parties subject to the Order of Confidentiality has indicated that it would willingly provide the Settlement Agreement to the Newspapers if the Order of Confidentiality were vacated. Cf. Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 756–57, 96 S. Ct. 1817, 1822–23 (1976).

[0]However, any interest in confidentiality either must arise under federal law or must be an interest which the Pennsylvania state courts would determine is sufficient to prevent disclosure under the Right to Know Act.

to intervene, and for further proceedings consistent with this opinion.